14 N.J. Super. 94 (1951)
81 A.2d 377
CHARLES RETI, PLAINTIFF-APPELLANT,
v.
VANISKA, INC., A CORPORATION OF NEW JERSEY, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 21, 1951.
Decided June 13, 1951.
*95 Before Judges McGEEHAN, JAYNE and WM. J. BRENNAN, JR.
Mr. Jacob E. Max argued the cause for appellant (Mr. Bernard Chazen on the brief).
Mr. Harry E. Walburg argued the cause for respondents (Messrs. Cox & Walburg, attorneys).
The opinion of the court was delivered by WILLIAM J. BRENNAN, JR., J.A.D.
At the first trial of this case defendant's motion to dismiss, made at the end of plaintiff's opening, was granted. We reversed. Reti v. Vaniska, Inc., 8 N.J. Super. 275 (App. Div. 1950).
Upon the retrial, plaintiff's action was again dismissed, this time at the close of all the proofs. Plaintiff appeals from the ensuing judgment.
Plaintiff was entitled upon the motion to have all proofs supporting his claim accepted as true and to the benefit of all legitimate inferences which might be derived therefrom. Cirulli v. Licata, 10 N.J. Super. 449 (App. Div. 1950). We have reviewed the record in light of that principle.
Defendant Gisinger operated a taxicab owned by defendant Vaniska, Inc. On July 23, 1947, at about ten o'clock in the morning, one McNulty hired the taxicab at the Vaniska cab-stand on North Wood Avenue, Linden. He "wanted to look the town over," and directed Gisinger to drive up *96 Wood Avenue. En route McNulty inquired the amount of fare to the State of Virginia. Gisinger ascertained from his employer, by means of the "two way radio" in the cab, that the fare would be $100. McNulty exhibited a "roll of bills," which satisfied Gisinger of his ability to pay the fare. Gisinger told McNulty he would have to make some preparations for the trip and McNulty asked him "to drop him off at the tavern on Elizabeth Avenue" and return for him after the preparations were completed. Gisinger did so and picked up McNulty "about half an hour later." Gisinger then proceeded to Route 25. When he reached Rahway McNulty directed him to "go back towards Elizabeth." Gisinger did so. Upon reaching Linden, McNulty directed Gisinger to drop him off at "Woty's Tavern at Tremley Point" and wait. McNulty was "badly intoxicated" at the time. After waiting a while Gisinger entered the tavern and saw McNulty "sitting about the middle of the bar" drinking. It was then about one o'clock. Gisinger went to the men's lavatory and when he came out three to five minutes later he saw that McNulty had gone. Gisinger went outside and "I seen the cab going up the street." McNulty had taken the cab. There was a police officer nearby whom Gisinger hailed, and he and Gisinger chased after the taxicab on foot. The taxicab circled the block and passed Gisinger and the officer after almost running them down. The officer commandeered a passing automobile in which he and Gisinger followed the taxicab to a point on a neighboring road where they discovered that it had collided with a truck driven by the plaintiff. The plaintiff's version of the manner in which the mishap occurred was, "I noticed this cab coming off the bridge, the railroad bridge, Tremley Point Road, and he was swaying, sort of. He hit the dirt pavement, and the dirt alongside of the pavement, and he seemed to sway over to the left, so I pulled off the road and tried to get out of his way. I could not go any further, and I reached the end of the pavement there, and he came head on into me." It is obvious that McNulty's negligent operation of the taxicab in his *97 intoxicated condition caused the accident and that plaintiff was without fault.
Gisinger's testimony was that when he entered the tavern he took the key from the ignition lock, and his change carrier, and left them both on the end of the bar when he went into the lavatory. We accept, however, for the purposes of the appeal, plaintiff's version that Gisinger left the key in the ignition lock,  this on the basis of plaintiff's evidence that some time after the event Gisinger admitted to him that such was the fact.
The question is whether the evidence presented a jury question whether defendants were guilty of negligence resulting in the damages sustained by plaintiff. Whether due care on the part of the driver of an automobile when leaving it un attended in a public street requires that he lock the ignition and remove the ignition key, is, in the absence of any statutory requirement in this connection, a matter upon which the many decisions on the subject throughout the country are at variance. The cases are collected in Annotations at 158 A.L.R. 1374, and 26 A.L.R. 912.
Plaintiff's action does not have the support of a statute or city ordinance, and for that reason many of the cases cited by him arising under a statute or ordinance are not pertinent authorities. Where there is a statute or ordinance which is violated by leaving a car unattended with keys in it, some jurisdictions have interpreted the legislation as requiring that the person violating the statute respond in damages even when the willful act of a third party has intervened. Such was the holding in Ross v. Hartman, 78 U.S. App. D.C. 217, 139 F.2d 14, 158 A.L.R. 1370 (U.S.App. Div., D.C. 1943), certiorari denied 321 U.S. 790, 64 S.Ct. 790, 88 L.Ed. 1080 (1944), and Ostergard v. Frisch, 333 Ill. App. 359, 77 N.E.2d 537 (App. Ct. Ill. 1948), cited by plaintiff. Other jurisdictions have held that the violator was not liable in such circumstances on the ground that violation was not the proximate cause of the injury. Galbraith v. Levin, 323 Mass. 255, 81 N.E.2d 560 (Sup. Jud. Ct. 1948); Roberts *98 v. Lundy, 301 Mich. 726, 4 N.W.2d 74 (Sup. Ct. Mich. 1942); Wannebo v. Gates et al., 227 Minn. 194, 34 N.W.2d 695 (Sup. Ct. Minn. 1948). The difference in result apparently depends upon the view whether the injuries were the consequences which the particular statute or ordinance was intended to prevent.
In this State, however, when, as in this case, it is not claimed that any statute or ordinance was violated, the applicable test is that laid down in Barbanes v. Brown, 110 N.J.L. 6, 7 (Sup. Ct. 1932): "The general rule is that a person who leaves an automobile in a public street unattended is under a duty to exercise such care in doing so as a person of ordinary prudence would exercise in the circumstances; and failure to exercise such care, whereby the machine by force of gravity, or by some other cause reasonably to be anticipated or guarded against, gets under way and inflicts injury, renders such person liable therefor in an action for damages." (Italics supplied.)
The rule was cited by us with approval in our previous decision in this case, Reti v. Vaniska, Inc., supra, and was followed in Saracco v. Lyttle, 11 N.J. Super. 254 (App. Div. 1951) where the owner was absolved of liability for injuries resulting from the collision of his automobile with another when his automobile was driven by an intermeddler who, as is claimed here, availed himself of the opportunity to take the car when he discovered the owner had left the key in the ignition switch. Cf. Lomano v. Ideal Towel Supply Co., 25 N.J. Misc. 162 (D.C. 1947); and see Curtis v. Jacobson, 54 A.2d 520 (Sup. Jud. Ct. Me. 1947); Lustbader et al. v. Traders Delivery Co., 67 A.2d 237 (Ct. App. Md. 1949); Bronk v. Davenny et al., 25 Wash.2d 443, 171 P.2d 237 (Sup. Ct. Wash. 1946); Wilson v. Harrington, 269 App. Div. 891, 56 N.Y.S.2d 157 (App. Div. N.Y. 1945), affirmed 295 N.Y. 667, 65 N.E.2d 101 (Ct. App. 1946); Restatement, Torts (1934), vol. 2, sec. 302, par. i.
We do not find in the evidence in this record any circumstances from which fair-minded men could logically infer *99 and honestly resolve that Gisinger should have anticipated McNulty's taking of the car and his negligent act.
Plaintiff insists that Gisinger "knew of the highly intoxicated condition of his passenger and of his passenger's erratic and irrational desire for aimless riding," and that in light of such knowledge the jury could find that Gisinger "should have realized that if his highly intoxicated passenger went back to the taxi and found it in its acceptable and inviting condition without a driver, he would be likely to drive off." The argument might be persuasive if Gisinger had gone off and left the key in the switch, with his drunken passenger alone on the front seat of the cab. See Morris et al. v. Bolling, 31 Tenn. App. 577, 218 S.W.2d 754 (Ct. App. Tenn. 1948). It might reasonably be said that such a situation is of the kind commonly recognized as affording temptations to which a recognizable percentage of humanity is likely to yield when intoxicated, Restatement, Torts, supra, sec. 448, comment (b). However, it is not denied here that when Gisinger went to the lavatory McNulty was safely ensconced at the bar and giving no evidence of a desire to leave. If McNulty's previous behavior should have alerted Gisinger to his probable subsequent conduct, it may more probably be inferred that what was reasonably to be expected was that McNulty intended pursuing his drinking pastime, not that he had a penchant for indulging in "aimless riding." We do not perceive in the situation anything that would put Gisinger on notice to anticipate the sudden willful and unlawful act of the taking of the taxicab. It was not a danger which Gisinger was bound to have foreseen or to have guarded against. In the circumstances, the trial court properly decided as a matter of law that there was no evidence to support plaintiff's suit. Defendants could not be charged in the circumstances with negligence resulting in plaintiff's injuries. Walter et al. v. Bond et al., 267 App. Div. 779, 45 N.Y.S.2d 378, affirmed 292 N.Y. 574, 54 N.E.2d 691 (Ct. App. 1944).
Affirmed.