69 N.J. Super. 110 (1961)
173 A.2d 564
EMILIA DELLA CERRA, BY HER GUARDIAN AD LITEM, ANNA DELLA CERRA, PLAINTIFF-RESPONDENT,
v.
EDWARD BURNS, DEFENDANT AND THIRD PARTY PLAINTIFF-RESPONDENT,
v.
RAY VERMAREC, INDIVIDUALLY AND T/A RAY'S SERVICE STATION, THIRD PARTY DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 22, 1961.
Decided June 26, 1961.
*112 Before Judges CONFORD, FREUND and KILKENNY.
Mr. Carl Greenberg argued the cause for third party defendant-appellant Ray Vermarec (Messrs. Schreiber, Lancaster and Demos and Mr. John W. Hayden, Jr., attorneys).
Mr. Jerome L. Yesko argued the cause for plaintiff-respondent Emilia Della Cerra.
Mr. Herman W. Steinberg argued the cause for defendant and third party plaintiff-respondent Edward Burns.
The opinion of the court was delivered by CONFORD, S.J.A.D.
Plaintiff Della Cerra sued defendant Burns, owner of an automobile, for damages to her own automobile resulting from Burns' car's being run into it, while parked, by a person unknown. Burns filed a third-party complaint against defendant Vermarec (doing business as Ray's Service Station). Della Cerra then amended her complaint to join Vermarec as a direct defendant. The action was tried to a jury in the Passaic County District Court. Upon its verdict, judgments in amounts of $500 and $400 were entered in favor of, respectively, the plaintiff Della Cerra and the third-party plaintiff Edward Burns, *113 and against Vermarec. A verdict of "no cause" was returned on Della Cerra's claim against Burns. Vermarec appeals from both of the judgments entered against him.
The claims arose out of a hit-and-run collision which occurred at 3:30 A.M., Sunday, February 8, 1959. One of Burns' two cars, driven by an unidentified man, ran into the front end of the Della Cerra car, which was parked at the curb in front of her home. The downstairs neighbor, awakened by the crash, saw only the driver's back as he ran off.
Burns had left the car at Vermarec's gas station Saturday morning, February 7, 1959, to have some repairs made. After doing some work on the car, Vermarec left the station at 6:00 P.M. and did not return until Monday, February 9, being out of the State over the weekend. Burns returned for the car about 7:30 P.M. Saturday evening but was informed by Vermarec's mechanic, Spann, who had been left in charge, that a minor repair to the speedometer cable had yet to be made. Thereupon he told Spann that he might return for the car later that evening. His hesitation was prompted by an uncertainty as to whether the repair could be completed on Sunday. If not, he would take the partially repaired car, since he needed it on Monday. He told Spann that he would go home to dinner while making up his mind, but his precise instruction to Spann is in dispute. According to Spann's testimony, Burns stated that when Spann closed up, the car was to be left outside, on the station premises, unlocked, with the key secreted under the floor mat on the driver's side. According to Burns' testimony the car was to be so left if Spann closed before 9:00 P.M., the normal closing hour. (There is an issue concerning the admissibility of Burns' testimonial version, which will be dealt with infra.) Vermarec had given Spann standing instructions, so Spann testified, that cars in running condition, left overnight, were to be locked in the enclosed service bays. But there is no evidence that this was known to Burns. Burns testified that Spann did not tell him *114 definitely whether the car could be repaired on Sunday, but Burns assumed that "possibly" it could, as Vermarec had done repair work for him on other Sundays. Spann testified he told Burns that "Ray [Vermarec] was out of the area and wouldn't be in."
Upon returning home, Burns was reminded of a social engagement that evening, and he decided to leave the car at the station until morning, but he did not so inform Spann.
Spann closed at 9:00 P.M. but remained around the station working on his own car until about 10:30 P.M. He then left Burns' car outside the building, on the station premises, with the key secreted underneath the floor mat, allegedly in conformity with Burns' directive. But for those instructions, said Spann, he would have locked the car in a bay in accordance with Vermarec's standing directions. Sometime during the five-hour interval between the closing of the station and the occurrence of the accident, an unknown person took the car and drove it off, with the consequence related above.
A casual employee of Vermarec, one Frank Drop, had worked at the station until 5:00 P.M. Saturday and was not scheduled to return to work until Monday or later. Vermarec testified on cross-examination that Drop, about one month before the accident, had availed himself of the use of a customer's automobile similarly situated.
According to Burns' testimony, his conversation with Spann did not deal specifically with the contingency of the station's not being closed before 9:00 P.M. and Burns' not returning for the car before it was closed. Burns argues that in such circumstances a duty of reasonable care of the car devolved upon Vermarec as bailee, represented by Spann as agent, and that a jury could find that duty violated if Spann did not follow Vermarec's standing orders for enclosing any car left overnight in a locked bay. But there was other testimony by Burns clearly indicating that in such circumstances he would expect, and the prior course of dealing was, that the car be left outside with the key secreted, just as it was actually left on the evening here involved. This *115 was adduced when, on cross-examination by Vermarec's counsel, Burns was interrogated as to why he did not phone Spann as to his plans when he was reminded by his wife, at home, prior to 9:00 P.M. on February 7, that they had an engagement to visit friends in Garfield and he therefore knew he would not be returning for the car that evening or during the night. He testified:
"Q. When did you remember that you were going to go to Garfield on this night? A. When I got home.
Q. Which was what, about 7:30, eight o'clock? A. Yes.
Q. And you didn't, when you remembered that you were going to go to Garfield that night  A. Yes.
Q. You didn't make any attempt to go back to the gas station and pick up the car? A. No, I didn't, because we were late already.
Q. Did you call Mike Spann at that time? A. No, I did not.
Q. You didn't call him and tell him to put the key  A. No, because Ray has taken my car before and told me to leave it there and leave the key under the floor mat and he would get it in the morning, at night.
Q. But he didn't tell you that this time? A. No, he didn't tell me that.
Q. And you didn't call Spann, or notify him, that you wouldn't be back that evening? A. No, I didn't." (Emphasis supplied)
Moreover, on redirect examination, Burns testified that on several previous occasions he had left his car at Vermarec's station overnight and it was never placed in a bay. The "practice right along" was to leave the car "outside" overnight. It is therefore beyond reasonable dispute as a matter of factual inference that, so far as Burns was concerned, he knew and expected that if he failed to return for the car before the station was closed for the night on February 7, 1961, it would be left outside the service station building, the doors unlocked, with the key probably left under the mat, where Burns concededly told Spann to put it on this occasion, and as was the past practice between Burns and the station proprietor.
We have concluded that several trial errors would ordinarily require a reversal and new trial in this case, but that, *116 more fundamentally, there was no liability on the part of Vermarec to either Della Cerra or Burns as a matter of law on the facts adduced, and that there should therefore be final judgment for Vermarec.

I.
Defendant Vermarec requested the trial court to charge the jury as follows:
"1  There is no proof in this case that Frank Drop was driving the vehicle of Burns at the time of this accident, and you are not to consider that he might or might not have been doing so.
2  There is no proof in this case that at the time of the accident Frank Drop was acting as the agent, servant or employee of Vermarec t/a Ray's Service Station or that he acted within the scope of any employment he may previously have had with defendant Vermarec."
Both requests were denied. We think it was prejudicial error to refuse to charge the second request, and that the substance of the first request should also have been given the jury.
The whole case was permeated with an atmosphere of suggestion emanating from counsel for Della Cerra and Burns that Drop was the miscreant who took the car. But in our judgment the aggregate of the allusions to Drop added up to no more than suspicion of his involvement. Any verdict postulated upon his being the thief would have had to be supported by proofs making for a hypothesis supportable as a matter of probability rather than mere possibility. The proofs here did not have that probative force. The jury should therefore have been told that Vermarec could not be implicated on any theory of vicarious liability as Drop's employer. That conclusion is further warranted by the fact that if Drop took the car at the hour it appears to have been stolen, he was patently not acting in the course of any employment with Vermarec. See Krolak v. Chicago Express, Inc., 10 N.J. Super. 60, 64 (App. Div. 1950); Restatement of Agency, 2d, § 229, p. 506.

*117 II.
Defendant Vermarec urges the court erred in permitting Burns to testify to a version of his conversation with Spann inconsistent with his answer to a pretrial request for admissions propounded by Vermarec. The request read:
"4. Defendant third party plaintiff further told Mike Spann, an employee of the third party defendant, that he did not know whether he would be back before 9 P.M. which was closing time for the service station of the said third party defendant and therefore told the said Mike Spann to put the ignition key to the 1953 Buick Super automobile owned by the defendant third party plaintiff under the mat in the front driver's seat of the said vehicle when the said Mike Spann closed the said service station for the night."
Burns' response was: "So much of paragraph Four as refers to the ignition key, admitted." We are satisfied that, upon proper objection, the operation of R.R. 4:26-1 would have prevented Burns' giving in evidence the qualified version of his conversation with Spann testified to, as this significantly modified the admission aforesaid. But the testimony came in without objection at the trial, and it is too late to complain of it on appeal. Moreover, the harm was minimized by Vermarec's having used the admission in support of his factual case.

III.
In our judgment the disposition of this appeal must turn upon the argument of Vermarec that any negligence the jury might find on his part was not the proximate or legal cause of the damages sustained by Burns and Della Cerra, but that Burns' own conduct was the sole legal cause of such damage. We regard the point as well taken. However, since Della Cerra has not appealed the judgment in Burns' favor as against her, we express no conclusion concerning the now moot question of his liability to her on the whole case.
*118 Recalling the outline of the facts stated hereinabove, Burns' own testimony demonstrates that he was in full accord with the car's being left outside the station building with the key under the mat at the time when he realized, at home, between 7:30 P.M. and 9:00 P.M. on February 7, 1961, that he would be going to Garfield and not back to the station to reclaim his car that night. This, he explained, as noted above, would be in accord with the prior course of dealing between himself and Vermarec on cars he left overnight on prior similar occasions. In such circumstances, the rationale of our holding in Kandret v. Mason, 26 N.J. Super. 264 (App. Div. 1953), is controlling. We there held that as between the negligence of a service garage which leaves a car for a customer at an incorrect address on a public street, unlocked, and with the keys accessible to a miscreant, and the negligence of the owner who has agreed to having the car left in such state at a location on a public street, the sole legal cause for the consequential theft is the negligence of the owner, not that of the garagekeeper (26 N.J. Super., at p. 267). In effect, we held that the making of the unsafe arrangement was essentially the doing of its owner, rather than the merely complaisant service man. There is no significant difference, in principle, between leaving an unlocked car on a public street and leaving it overnight on an unattended, open-air service station. The consequent exculpation of the service man (both in Kandret and here) may be accommodated to the analysis of the doctrine of proximate cause in our recent opinion in Avedisian v. Admiral Realty Corp., 63 N.J. Super. 129, 135 (App. Div. 1960), on the basis that the factual contribution to the harm by the negligence, if any, of the service man is so slight in degree in comparison with that of the car owner that the contribution of the former, in this sort of context, is not a sufficiently "substantial factor" to justify imputing to his conduct the legal consequence of causality of the harm. See also Hartman v. City of Brigantine, 42 N.J. Super. 247, 261 (App. Div. 1956), affirmed 23 N.J. 530 (1957); Lutz *119 v. Westwood Transportation Co., 31 N.J. Super. 285, 289 (App. Div. 1954), certification denied 16 N.J. 205 (1954).
Burns argues that Vermarec breached a duty to him in failing to warn him that Drop had previously taken another customer's car without authority. To this there are several answers. First, the alleged default is academic unless it can be fairly inferred that Drop took the car on the occasion here in question, and we have concluded that such an inference was not here permissible on the proofs as a postulate of Vermarec's liability. Second, an isolated, unauthorized taking by Drop at another time did not constitute such notice to Vermarec of the likelihood of Burns' car's being taken by Drop on the occasion here in question as would permit a jury conclusion of negligence by Vermarec in failing to tell Burns about the previous occurrence. Third, Vermarec is being sought to be held here vicariously for Spann's default, on the theory of respondeat superior. Vermarec personally had nothing to do with the arrangements for leaving of the car overnight; when he left, at 6:00 P.M., he had no reason to suppose the car would be left overnight. As for imputed liability for Spann's conduct as his agent, the latter is not shown to have had knowledge of Drop's earlier adventure and therefore cannot be charged with fault in not telling Burns about it.
Since we have held that Vermarec's conduct or that of his agent was not the legal cause of the improper taking of the car on the night in question, it cannot, a fortiori, constitute the legal cause of the damage inflicted upon plaintiff Della Cerra's car by the taker of the car.
It results that judgment should have been rendered for defendant Vermarec against both of his adversaries on his motion at the end of the case.

IV.
The facts which constitute the basis of our holding in III, above, would also appear to warrant a legal conclusion of absolution for Vermarec on the added theory of termination *120 of the bailment before the theft of the car. In Moore's Trucking Co. v. Gulf Tire & Supply Co., 18 N.J. Super. 467, 470 (App. Div. 1952), certification denied 10 N.J. 22 (1952), this court described the holding in Zucker v. Kenworthy Brothers, 130 N.J.L. 385 (Sup. Ct. 1943), as being to the effect that no bailment existed between a commercial garagekeeper and a customer-car owner when the latter was furnished with a key to the garage so that he might come and go with the car as he chose. We said in the Moore's Trucking Co. case, supra, that the critical criterion of the bailment relation is whether "primary control of the chattel for the time being" is being turned over to another by the owner. It appears clear to us as a matter of law, on such of the facts here as are undisputed, that primary control of the car had not been shifted from Burns to Vermarec as of the time the car was stolen. Either had access to the car during the early morning of February 8. Burns had no understanding based on anything he heard from Vermarec or Spann that any work would be done on the car on February 8, and he had expressly reserved the right to take the car away at any time. There was, at most, joint control of the car at the time of the theft, and therefore no bailment. However, we do not find that Vermarec called upon the trial court for any specific action responsive to any argument to it based upon this view of the facts and law. In any case, the matter is mooted by our holding under III, supra.
But, before leaving this point, it is clear that the trial court erred in not granting defendant's request to charge No. 4. This, in substance, would have told the jury that if Spann acted in compliance with Burns' instructions, as he said he did, Burns alone would be responsible for the taking of the car and Vermarec would not be liable to either Burns or Della Cerra. No equivalent instruction was given the jury by the court. The requested instruction went to the heart of the defense as to both claimants and should have been granted.

*121 V.
Miscellaneous other points have been argued but need not be discussed in view of our holding under III, supra. We wish to note, specifically, that we are expressing no opinion concerning the present scope, applicability or continued justification of the holding in Saracco v. Lyttle, 11 N.J. Super. 254, 257 (App. Div. 1951), that if one were regarded as negligent in leaving an unlocked, unattended car on a street with key available, liability would not extend to the consequences of the negligent use of the car by a thief, that being either an "intervening efficient cause" or a risk "not reasonably to be anticipated" by the owner. Compare Ney v. Yellow Cab Company, 2 Ill.2d 74, 117 N.E.2d 74 (Sup. Ct. 1954), 51 A.L.R.2d 624; Ross v. Hartman, 78 U.S. App. D.C. 217, 139 F.2d 14, 158 A.L.R. 1370 (App. D.C. 1943), certiorari denied 321 U.S. 790, 64 S.Ct. 790, 88 L.Ed. 1080 (1944). Also contrast the philosophy of Rappaport v. Nichols, 31 N.J. 188, 203 (1959); and see Avedisian v. Admiral Realty Corp., supra (63 N.J. Super., at pp. 134-135).
Judgment against defendant Vermarec reversed with directions for entry of final judgment in his favor as against plaintiff Della Cerra and defendant-third-party plaintiff Burns.