120 N.J. Super. 432 (1972)
294 A.2d 727
ROGER ZINCK, ELINOR M. ZINCK, AND MARY A. SCHOUDT, PLAINTIFFS-APPELLANTS,
v.
ROBERT WHELAN, KENNETH J. SCHOUDT, AND PATRICK SCHOUDT, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 30, 1972.
Decided August 23, 1972.
*434 Before Judges CONFORD, MATTHEWS and FRITZ.
Mr. H. Hurlburt Tomlin argued the cause for appellants (Messrs. Tomlin and Lewis, attorneys).
Mr. Ernest F. Picknally argued the cause for respondents (Messrs. Schuenemann & Picknally, attorneys).
The opinion of the court was delivered by CONFORD, P.J.A.D.
Plaintiffs appeal from grant of summary judgment in favor of defendants Schoudt. Although the judgment is technically interlocutory and should therefore have been the subject of a motion for leave to appeal, we grant leave to appeal on our own motion nunc pro tunc *435 and reverse. We hold the case should have gone to trial on the factual issues of negligence, at least as to Patrick T. Schoudt ("Patrick"), and as to legal (proximate) cause.
On the basis of the pleadings and depositions, and the affidavit of defendant Whelan, together with legitimate inferences therefrom favorable to plaintiffs, a fact-finder could have found as follows.
On the evening of June 24, 1970 Patrick, son of defendant Kenneth J. Schoudt, and a licensed driver for three or four years, parked his father's automobile on the street in front of their home at 110 East Court Drive, Blackwood, unlocked and with the key in the ignition. The vehicle was inferably intended to be left there for the night. The area is apparently of a suburban, residential character, about three blocks from the business section of town and from a major highway. In the very early morning of June 25, 1970 defendant Whelan, then not quite 17 years of age, accompanied by three friends, saw the Schoudt car in the darkness on the street. The doors were unlocked. The boys entered the car and found the key in the ignition, whereupon they drove off, Whelan at the wheel. They parked and locked the car near Whelan's home. At about 1 P.M. on June 27 the boys, Whelan driving, were traveling south on U.S. Rt. 611 near Riegelsville, Pa. (about 50 miles from the scene of the theft of the car), when the vehicle crossed the center line into the northbound lane and collided head-on (according to the complaint) with a car traveling north in which plaintiffs were driver and passengers, respectively. All three were severely injured and their car extensively damaged.
By coincidence, plaintiffs Elinor Zinck and Mary Schoudt are, respectively, sister and mother of defendant Kenneth Schoudt.
In granting summary judgment for defendants the Law Division judge felt himself bound by the holding of this court in Saracco v. Lyttle, 11 N.J. Super. 254 (1951). In that case defendant parked his car on the street, leaving the *436 ignition key in it while visiting a friend. The car was then taken without permission by a son of the host, and several blocks distant it collided with plaintiff's vehicle. At the end of the trial the court directed a verdict in favor of defendant. In affirming, this court quoted the general rule "that a person who leaves an automobile in a public street unattended is under a duty to exercise such care in doing so as a person of ordinary prudence would exercise in the circumstances; and failure to exercise such care whereby the machine by force of gravity, or by some other cause reasonably to be anticipated or guarded against, gets under way and inflicts injury, renders such person liable therefor in an action for damages" (emphasis added), Barbanes v. Brown, 110 N.J.L. 6, 7 (Sup. Ct. 1932). The court then said:
No claim was made that Lyttle violated any provision of a statute or ordinance. See Note, 158 A.L.R. 1374.
Under the facts of the present case, it was not reasonably to be anticipated that an intermeddler would not only drive the car away but also would later negligently operate it. The leaving of the automobile unlocked afforded an opportunity for the unlawful taking by Padula, but this was merely a circumstance and not the proximate cause of the collision. Responsibility for an accident cannot attach to one unless his act or failure to act was the proximate cause of the injury. The proximate cause of the collision was the unskillful handling of the car by Padula. The negligence of the intermeddler, in driving into the vehicle of plaintiff, was an intervening efficient cause interrupting the chain of causation between defendant Lyttle's act in leaving his key in the ignition switch (whether or not such act in itself constitutes negligence) and the damage to the plaintiff. [N.J. Super. at 257]
Cf. Reti v. Vaniska, Inc., 14 N.J. Super. 94 (App. Div. 1951); Kinsley v. Von Atzingen, 20 N.J. Super. 378 (App. Div. 1952); Della Cerra v. Burns, 69 N.J. Super. 110, 121 (App. Div. 1961).
The principles stated in Saracco were then and still remain the view of a substantial majority of the jurisdictions in this country that have passed on the basic point, whether or not there was a statute or ordinance (frequently found) prohibiting the leaving of an unlocked car on a public way with key *437 in the ignition or with an open ignition switch. Most of them find as a matter of law no proximate cause; some, no duty of the driver to the injured plaintiff, and therefore no negligence. In some, both concepts coalesce to preclude liability. A fair sampling of the out-of-state decisions against recovery in this fact-pattern follows[1]:
Galbraith v. Levin, 323 Mass. 255, 81 N.E.2d 560 (Sup. Jud. Ct. 1948) (reg.); Richards v. Stanley, 43 Cal.2d 60, 271 P.2d 23 (Sup. Ct. 1954) (no reg.); Liney v. Chestnut Motors, Inc., 421 Pa. 26, 218 A.2d 336 (Sup. Ct. 1966) (no reg.); Midkiff v. Watkins, 52 So.2d 573 (La. Ct. App. 1951) (no reg.); Bennett v. Arctic Insulation, 253 F.2d 652, 17 Alaska 537 (9 Cir.1958) (applying Alaska law, no reg.); Lingefelt v. Hanner, 125 So.2d 325 (Fla. Ct. App. 1960) (reg.); Ross v. Nutt, 177 Ohio St. 113, 203 N.E.2d 118 (Sup. Ct. 1964) (reg.); Liberto v. Holfeldt, 221 Md. 62, 155 A.2d 698 (Ct. App. 1959) (reg.), but see note below as to Khoyan v. Turner, 255 Md. 144, 257 A.2d 219 (Ct. App. 1969), apparently contra; Hersh v. Miller, 169 Neb. 517, 99 N.W.2d 878 (Sup. Ct. 1959) (reg.); Bouldin v. Sategna, 71 N.M. 329, 378 P.2d 370 (Sup. Ct. 1963) (reg.); Clements v. Tashjoin, 92 R.I. 308, 168 A.2d 472 (Sup. Ct. 1961) (reg.); see Meihost v. Meihost, 29 Wis.2d 537, 139 N.W.2d 116 (Sup. Ct. 1966) (dictum; key left in box in glove compartment) (reg.).
Prior to the adoption of a regulatory statute the New York Court of Appeals affirmed a short, conclusional opinion of the Appellate Division denying liability for absence of proximate cause. Wilson v. Harrington, 269 App. Div. 891, 56 N.Y.S. 2d 157 (1945), aff'd 295 N.Y. 667, 65 N.E.2d 101 (1946). After adoption of a regulatory statute, however, the Appellate Division ruled the issues of negligence and proximate cause were for a jury, the statutory purpose having been *438 both to deter theft and to protect the life and property of others on the highway. Guaspari v. Gorsky, 36 App. Div.2d 225, 319 N.Y.S.2d 708 (1971), app. dism. 29 N.Y.2d 892, 328 N.Y.S.2d 679 (Ct. App. 1972).
In Sailor v. Ohlde, 71 Wash.2d 646, 430 P.2d 591 (Sup. Ct. 1967), where the truck stolen had been parked upon private warehouse premises, the court, although holding against liability, distinguished the case where the vehicle is left on a public street, saying "there is a significant difference" between the two situations (at 593).
Most of the cases denying liability are fairly conclusional in asserting that the theft of the car or the negligent operation by the thief, or both, are not foreseeable, thereby precluding postulates of negligence and proximate cause. Richards v. Stanley, supra, gives another reason for its holding against any duty to the injured person  that the risk of negligent operation by a thief is "less than the risk [defendant] might intentionally have created without negligence by entrusting [his] car to another" (271 P.2d, at 27); for example, to one under 25, where the statistics indicate higher than normal susceptibility to accidents. We think the analogy was not apt even in 1954, when Richards was decided, and that it is decidedly inappropriate today in view of the statistics set forth below concerning the very high incidence of accidents involving thief-driven vehicles. The judicial value-judgment involved is perhaps more candidly stated in Meihost v. Meihost, supra, where the court simply said (139 N.W.2d, at 121): "Under most circumstances, allowance of recovery would place too unreasonable a burden upon the owners of motor vehicles."
The California no-duty rule of Richards v. Stanley, supra, was modified in Hergenrether v. East, 61 Cal.2d 440, 39 Cal. Rptr. 4, 393 P.2d 164 (Sup. Ct. 1964), where "special circumstances" were found to create a jury question in respect of both duty and proximate cause. The defendant parked a truck leaving a key in the ignition on a "skid-row" *439 type street from which an inebriate took the car and crashed into plaintiff's vehicle not long after. There, as distinguished from the situation in Richards v. Stanley, the court thought defendant had reason to expect a thief would be an incompetent driver.
A substantial and growing number of jurisdictions, though still a minority, have held, in the ordinary fact case of theft and accident within a reasonable time thereafter, that there are at least jury questions as to duty, negligence and proximate cause, particularly where there is a statute or ordinance prohibiting the leaving of the key in the ignition of an unattended car in a public place. Davis v. Thornton, 384 Mich. 138, 180 N.W.2d 11 (Sup. Ct. 1970) (reg.), (in effect overruling the no-liability decision of Corinti v. Wittlopp, 355 Mich. 170, 93 N.W.2d 906 (Sup. Ct. 1959)); Ney v. Yellow Cab Co., 2 Ill.2d 74, 117 N.E.2d 74 (Sup. Ct. 1954) (reg.); Ross v. Hartman, 78 U.S. App. D.C. 217, 139 F.2d 14 (1943) (reg.); Myers v. Gaither, 232 A.2d 577 (D.C. Ct. App. 1967), aff'd sub nom. Gaither v. Myers, 131 U.S. App. D.C. 216, 404 F.2d 216 (1968) (reg); Justus v. Wood, 209 Tenn. 55, 348 S.W.2d 332 (Sup. Ct. 1961), 2d reh. den. 349 S.W.2d 793 (Sup. Ct. 1961) (reg.); Guaspari v. Gorsky, supra (reg.); Alberone v. King, 26 Conn. Super. 98, 213 A.2d 534 (Super. Ct. 1965) (no reg.); Mellish v. Cooney, 23 Conn. Sup. 350, 183 A.2d 753 (Cir. Ct. 1962) (no reg.); but see, contra, Consiglio v. Ahern, 5 Conn. Cir. 304, 251 A.2d 92 (Cir. Ct. A.D. 1968) (no reg.; decision by a court of lower rank than that of Alberone v. King, supra); Mezyk v. National Repossessions, Inc., 241 Ore. 333, 405 P.2d 840 (Sup. Ct. 1965) (no reg.) (an a fortiori case since car was taken from used car lot); accord: Schaff v. R.W. Claxton, Inc., 79 U.S. App. D.C. 207, 144 F 2d 532 (1944); contra: Kalberg v. Anderson Bros. Motor Co., 251 Minn. 458, 88 N.W.2d 197 (Sup. Ct. 1958); Khoyan v. Turner, 255 Md. 144, 257 A.2d 219 (Ct. App. 1969) (reg.) semble (apparently contrary to Liberto v. Holfeldt, supra; cf. Tyndall *440 v. United States, 295 F. Supp. 448 (E.D.N.C. 1969)).[2]
In its recent reappraisal of the law on this subject in Davis v. Thornton, supra, 180 N.W.2d 11, the Michigan court dealt with a case of several minors taking a car on the street, keys in ignition, and becoming involved in an accident with plaintiffs the same day. The court quoted the statistics cited in Gaither v. Myers, supra, 404 F.2d 216 at 222-223, and see infra, from a study made in 1968 by the National Auto Theft Prevention Campaign concerning the substantial incidence of stolen vehicles involved in accidents and the high correlation between thefts and keys left in ignitions. It concluded that even as a matter of common law, independent of the Detroit ordinance there involved, the issues of negligence and proximate cause were for resolution by a jury. 180 N.W.2d at 14, fn. 8 at 16-17 ("In our view, the ordinance in this case is an affirmation of the common law"). Standard principles of tort liability for creating unreasonably increased hazards of harm to others were cited in support of the result reached, passim.
In the Gaither case, supra, where the court had a choice of law problem as between the District of Columbia, where the car was parked and the theft occurred, and where violation of the statute is regarded as the proximate cause of the injury to the third person ensuing from the negligence of the thief, and the State of Maryland, where the accident took place, but whose law (as of that date)[3] regarded the action of the *441 thief as an intervening event breaking the chain of causation, the court applied the law of the former as furthering an important policy interest of the District. The court, whose bench included then Judge Burger (now Chief Justice), said:
The strength of the District's policy of "discouraging the hazardous conduct which the ordinance forbids" has not diminished during the intervening 25 years. [Since Ross v. Hartman, supra.] On the contrary we have never had greater need for doctrines helping to deter injuries and crimes traceable in significant measure to keys left in unattended cars. [404 F.2d at 222]
The court then alluded to the National Auto Theft Prevention Campaign launched by the Attorney General of the United States and 19 responsible organizations in March 1967 and referred to some of its campaign findings, as well as those by a survey of the U.S. Department of Justice, Criminal Division. This data indicated that of the over one million cars stolen nationally in 1966 24% were involved in accidents; that the accident rate for stolen cars is estimated to be approximately 200 times the normal accident rate, and that of the total cars stolen the key had been left in the car in 42.3% of the cases.
The District of Columbia Court of Appeals, whose decision in Myers was affirmed by the United States Circuit Court of Appeals, had said:
The high incidence of auto thefts in the District of Columbia, the constant warnings to the public to remove keys to prevent such thefts, the frequency of high speed chases involving stolen motor vehicles, all persuade us that the District has an overriding interest in preventing such occurrences and in encouraging owners to exercise greater caution in parking their automobiles. [232 A.2d 584]
The wisdom in this area which presently available statistics have imparted (or should have) to the general public was manifest early to the Circuit Court of Appeals of the District of Columbia in the leading Ross case, supra, 139 F.2d 14. The trial court had dismissed the action on the basis of a *442 1916 precedent. The facts were in the classic pattern we are considering. The appellate court said (at 15, 16), "Both negligence and causation are too clear in this case for submission to a jury." Further:
Everyone knows that children and thieves frequently cause harm by tampering with unlocked cars. The danger that they will do so on a particular occasion may be slight or great. In the absence of an ordinance, therefore, leaving a car unlocked might not be negligent in some circumstances, although in other circumstances it might be both negligent and a legal or "proximate" cause of a resulting accident.
But, said the court, where there was a violation (as there) of an ordinance designed to promote safety, a more affirmative approach was required (at 15, 16).
The evident purpose of requiring motor vehicles to be locked is not to prevent theft for the sake of owners or the police, but to promote the safety of the public in the streets. * * * This negligence created the hazard and thereby brought about the harm which the ordinance was intended to prevent. It was therefore a legal or "proximate" cause of the harm.

* * * * * * * *
There are practical as well as theoretical reasons for not excusing [defendant]. The rule we are adopting tends to make the streets safer by discouraging the hazardous conduct which the ordinance forbids. It puts the burden of the risk, as far as may be, upon those who create it. * * * Since appellee was responsible for the risk, it is fairer to hold him responsible for the harm than to deny a remedy to the innocent victim.
The foregoing logic (without accepting the negligence per se approach of the District) seems unassailable.
In the Illinois case of Ney v. Yellow Cab Co., supra, 117 N.E.2d 74, the Supreme Court settled the preexisting difference of views on the subject in the lower appellate courts. In holding the issues of negligence and proximate cause were for the jury, the court adverted to the flexibility of the common law to meet newly arising exigencies and social usages (at 79), and said, ibid.
*443 The incidence of automobile thefts and damages and injuries resulting from such larcenous escapades has accordingly increased. * * * Incidents of serious havoc caused by runaway thieves or irresponsible juveniles in stolen or "borrowed" motor vehicles frequently shock the readers of the daily press.
The expression of one other court espousing the minority view will round out the reasoned rationale typically invoked by that line of authority. In Justus v. Wood, supra, 348 S.W.2d 332, the Tennessee court said:
Considering the nature of the acts and the circumstances surrounding the entire matter, it seems quite clear that reasonable minds might differ as to whether this intervening force of the negligent thief was within the range of reasonable anticipation of [defendant] [at 335]
and further:
It is common knowledge that a person possessed of the characteristics which would cause him to thus steal an automobile is a person who is irresponsible and totally devoid of regard for the rights and safety of others who might be using the street at the same time that he, the thief, was operating it in heavy traffic. [at 338]
In denying a second petition for rehearing the court struck to the core of the intervening-cause approach of the majority rule, saying:
To hold, as is the contention of the petitioner, that the injuries herein were due solely to the negligent operation, by an unauthorized person, of this automobile appears to beg the question, * * * [it] assumes that the misappropriation of the car was unforeseeable. The statute, itself, is based in part on the likelihood that cars left unattended in violation of this statute will be taken, and implies a degree of foreseeability of that result. * * *
[The statute] is protection to life and property which might otherwise be affected by improper movement of the automobile. [349 S.W.2d at 793-794]
This court itself began to entertain reservations concerning the Saracco rule when it stated, in the 1961 case of Della Cerra v. Burns, supra:
*444 * * * We wish to note, specifically, that we are expressing no opinion concerning the present scope, applicability or continued justification of the holding in Saracco v. Lyttle, 11 N.J. Super. 254, 257 (App. Div. 1951), that if one were regarded as negligent in leaving an unlocked, unattended car on a street with key available, liability would not extend to the consequences of the negligent use of the car by a thief, that being either an "intervening efficient cause" or a risk "not reasonably to be anticipated" by the owner. Compare Ney v. Yellow Cab Company, 2 Ill.2d 74, 117 N.E.2d 74 (Sup. Ct. 1954), 51 A.L.R.2d 624, Ross v. Hartman, 78 U.S. App. D.C. 217, 139 F.2d 14, 158 A.L.R. 1370 (App. D.C. 1943), certiorari denied 321 U.S. 790, 64 S.Ct. 790, 88 L.Ed. 1080 (1944). Also contrast the philosophy of Rappaport v. Nichols, 31 N.J. 188, 203 (1959). [69 N.J. Super. at 121]
Assuming, arguendo, as a number of the foregoing authorities have averred, that leaving a key in the ignition of an unlocked car in a public place could be found by a reasonable jury to be negligence, whether or not a prohibitory regulation were involved, the hypothesis of a jury question on the issue of proximate cause as to the ensuing accident and injury has the expressed approbation of the Supreme Court of this State. See the approving syntheses in Rappaport v. Nichols, 31 N.J. 188, 199, 200 (1959), of the minority-rule cases of Ney v. Yellow Cab Co. and Ross v. Hartman, both supra, particularly in respect of the proposition "that if the intervention of the theft might reasonably have been foreseen it would not break the chain of causation" (at 200), and that since the defendant had created the risk it was "fairer to hold him responsible for the harm than to deny a remedy to the innocent victim" (ibid.). And see Restatement, Torts 2d, §§ 447, 448 (1964), the latter section impelling the conclusion that foreseeability of the asserted intervening intentional tort or crime need not be anticipated by the actor as a literally probable consequence of his action (i.e., more likely to occur than not in the particular instance), but merely that the actor "realized or should have realized the likelihood" that his action "might" create an opportunity for the third person to commit the tort or crime. As for the eventuation of the *445 accident, the criterion of foreseeability is whether the actor should have realized that a thief "might so act" or whether a reasonable man, knowing the situation at the time of the thief's negligence, "would not regard it as highly extraordinary" that the accident had taken place. § 447.
"The fact that there were also intervening causes which were foreseeable or were normal incidents of the risk created would not relieve the tortfeasor of liability." Rappaport v. Nichols, supra, 31 N.J. at 203. Foreseeability can in appropriate contexts extend to criminal activity by third persons. See Genovay v. Fox, 50 N.J. Super. 538, 550-551 (App. Div. 1958), rev'd on other grounds, 29 N.J. 436 (1959). See also 2 Harper and James, Law of Torts (1956), § 20.5 at 1141 et seq.
A study of the authorities cited above makes it evident that basically the key to duty, negligence and proximate cause in the fact-pattern under review is the foreseeability vel non to a reasonable man of an unreasonably enhanced hazard, when a motor vehicle is left unlocked in a public place with key in the ignition, of both the theft or misappropriation of the vehicle and an ensuing mishandling of it by the taker with death, injury or destruction of property of others lawfully using the highways as the result. If there is such foreseeability, then, on principle, particularly in the light of the minimal social utility of the causative conduct of the possessor of the car, a duty arises toward the members of the public using the highways, its breach is negligence, and the injury is the proximate result of the breach, or so a jury should be permitted to find in the generality of the cases. See, generally, Prosser, Torts (3d ed. 1964), at 148, 149, 151, 173, 311 et seq.
It is implicit in the foregoing statement that the result should not necessarily depend on whether or not there is a prohibitory regulation. Some of the courts which have permitted recovery where there was a regulation have indicated that the same result would obtain without it on common-law principles; e.g., Ross v. Hartman and Davis v. Thornton, *446 supra. A clear majority of the cases involving regulations, even where recovery was disallowed because of absence of proximate cause, have conceded that the purpose of such regulations, at least in part, was to reduce the hazard of accidents caused by the takers of the vehicle. This is certainly the purpose of the Uniform Vehicle Code, § 11-1101 of which prohibits, among other things, leaving an unattended car in a public place with key in the ignition. That section or its equivalent is law in 23 states. Uniform Vehicle Code, Annot. 1967, at 560-562. The purpose of the Code is stated in Uniform Vehicle Code and Model Traffic Ordinance (rev. 1968), Foreword p. VII ("* * * that no legitimate user of the highway, whether in a vehicle or on foot, shall be killed, injured or frustrated in such use by the improper behavior of others").
Common-law courts having evolved the law of negligence, they are obviously free to and should mold its application as developing experience and sound judgment counsel in the broad public interest and in the interests of justice. The fact that New Jersey has no pertinent legislation in the field under consideration is no bar against our courts performing their traditional common-law function in this regard. See Collopy v. Newark Eye and Ear Infirmary, 27 N.J. 29, 42 (1958). In undertaking to do so, however, courts should inform themselves on the basis of such reliable empirical data as are available. Such data were not available in 1951 when we decided Saracco v. Lyttle, supra. However, the data now at hand, taken in conjunction with social trends which are commonly known, indicate that the hazard of car theft is rapidly growing and that both its relationship to keys being left in the ignitions of unlocked vehicles and the extraordinary correlation between thefts and disastrous incidental accidents are far clearer now than in the days when the doctrine of no-proximate-cause in this area was getting its foothold in judicial thought.
Some of the data is mentioned in the discussion above of the recent District of Columbia Circuit Court of Appeals *447 opinion in Gaither v. Myers, supra, 404 F.2d at 222, particularly the allusion therein to the estimated accident rate for stolen cars being 200 times the normal accident rate.[4] But there is much other concordant, convincing data from sources supplied us by appellants which we deem reliable.
In 1950 the national rate of stolen vehicles per 100,000 population was about 100. President's Commission on Law Enforcement and Administration of Justice, Task Force Report: Crime and Its Impact  An Assessment, at 27 (1967). In 1970 the rate was 453.5, an increase of over 350%. United Crime Reports: Crime in the United States (1970) (promulgated by F.B.I.) ("Uniform Crime Reports"). The 1964 rate was 242. Since 1960 the rate increased 149.7%. That increase has been four times greater than both the percentage increase in automobile registrations generally and that of persons aged 15-24 years. 1970 Uniform Crime Reports, at 28.
As of 1964 50% of the thefts involved minors under 18. Uniform Crime Reports, at 19. 42% of the cars stolen had the keys left in the ignition or the ignition unlocked. Id. at 20. "Most auto thefts, two-thirds, occur at night, and over one-half of the thefts are from private residences, apartments and/or from streets in residential areas." Id. at 20.
In 1966 the Department of Justice conducted a survey of this subject. See Hearings on H.R. 15215 before Subcommittee No. 5 of the House Committee on the Judiciary, 90th Congress, 2d Session, at 31-39 (1968) ("Justice Department Survey"). This was based upon questionnaires returned by 1,659 convicted car thieves involved in 4,077 offenses. The survey showed that 59% of the cars stolen had the keys left in the ignition or the switch unlocked. Justice Department *448 Survey, at 32. 18.2% of the cars taken were subsequently involved in accidents. Id. at 33.
Since 1967 the Attorney General of New Jersey has promulgated an annual statistical crime summary. Uniform Crime Reports of New Jersey. The 1969 report (at 57) indicates a rise in auto theft of 25% from 1967 to 1969. 48% of the thefts were by persons under 18. Ibid. Over 45% of the thefts were from the streets of residential areas and more than 70% occurred at night. Id. at 59. Inquiries of owners of cars stolen indicated that 34% professed to be unable to inform the police as to whether the key was in the ignition or whether the car was locked; but of those who purported to remember, the key was left in the ignition or elsewhere in the vehicle in 17% of the cases. Id. at 59.[5] In any event, the same report (at 59) observes:
The degree of negligence of motor vehicle operator in most cases dictates whether or not the theft will occur. The portion of thefts attributed to the professional car thief is relatively small when compared to that portion perpetrated by the non-professional whose actions depend chiefly on the opportunities afforded by careless operators who fail to take normal safeguards when leaving a motor vehicle unattended.
We think the reasonably prudent motor car operator can today justly be held to an awareness of the gravamen of the foregoing data, if not of the specific figures, which may vary from time to time, locality to locality or from one study to another. As noted above, on March 1, 1967 the United States Attorney General publicly announced the start of the Justice Department's National Auto Theft Prevention Campaign, a drive against the very problem here of concern. The *449 campaign has continued since, abetted by wide media and other publicity. Automobile owners are continuously warned to remove the key and lock the vehicle when parking. By virtue of Motor Vehicle Safety Standard 114 (33 Fed. Reg. 6471 (1968)), as announced by the Federal Highway Administrator (effective January 1, 1970), new cars must contain separate systems to lock the engine and steering mechanism so as to prevent the operation of either without a key. There is also mandated the implementation of warning devices to signal the presence of the key in the ignition to an operator leaving the vehicle. All of these well-publicized indicia of the danger involved reinforce the common-sense awareness thereof which some of the minority jurisdictions felt justly imputable to a reasonably prudent driver years ago.
The fact that 23 state legislatures and countless municipal governing bodies have for a long time deemed it necessary as a matter of public safety to prohibit leaving ignition keys in unattended unlocked cars in public places further attests to the wide-spread general recognition of the hazard in question and its potential for great harm to innocent users of the highways. The New Jersey scene is not exempt from these conditions notwithstanding our Legislature has not acted on the subject. There being no decision of the New Jersey Supreme Court on the subject, we are free to, and do herewith hold, that Saracco v. Lyttle, supra, does not accord with present-day realities, subserve existing social needs or accomplish essential justice. It is overruled. A "cause reasonably to be anticipated or guarded against," Barbanes v. Brown, supra, 110 N.J.L. at 7, may be found by a jury to include the theft of the car in such a situation as here and the negligent injury of others on the highway by the thief.
Nothing stated hereinabove is intended to imply that a fact-finder could not reasonably return a verdict for defendants in the present case, or that the evidence in some comparable situations might not possibly justify even a judgment for defendant as a matter of law. Findings as to either negligence or proximate cause, whether by fact-finder or by *450 the court as a matter of law, must depend on the entire circumstantial spectrum revealed by the proofs in a particular case. See, e.g., the reference in Alberone v. King, supra, to such relevant circumstances as the position and location of the parked vehicle, access thereto, operational condition of vehicle, its proximity to surveillance, the time of day or night taken and the length of time elapsing from the taking to the accident; see also, Ross v. Hartman, supra, 139 F.2d at 15.
We do not believe that the instant circumstances of a lapse of 2 1/2 days between theft and accident and the 50-mile distance between the points of theft and accident dictate judgment for defendant as a matter of law whether on the grounds of remoteness or otherwise. And this notwithstanding the fact that the great preponderance of the reported cases allowing recovery involves same-day and relatively nearby accidents. See the apparently contrary decision in Casey v. Corson and Gruman Co., 95 U.S. App. D.C. 178, 221 F.2d 51 (D.C. Cir 1955), and the later implicit criticism of that case by the same court in Gaither v Myer, supra, 404 F.2d at 221 "* * * [where] the mishap occurs substantially later and distant, the hiatus may tend to negative proximate cause." (Emphasis added).
So here, a jury might give such circumstances sufficient weight to find absence of proximate cause because of remoteness; but an equally reasonable jury, in our view, might conclude that the likely potential for disastrous driving by the defendant juvenile incident to his misconduct and inferential inexperience, guilt-consciousness or carefreeness was not fully spent by either the time or distance differential involved. Motor vehicles can be driven great distances on today's highways in a short time.
As to the question of Patrick's negligence in leaving the key in the ignition, a fact issue for the jury was clearly presented. The cover of darkness and absence of surveillance was an inviting *451 setting for the taking. The car was inferably left in the street for the night. And the statistical data cited above indicate that thefts from residential streets, or after nightfall, are of relatively high incidence.
Judgment reversed.
NOTES
[1] We note the incidence or absence of a prohibitory statute or ordinance by "(reg.)" or "(no reg.)" in the citations of the cases.
[2] The decisions are collected in 51 A.L.R.2d 633 (1957), as supplemented by A.L.R.2d Later Case Service for 49-55 A.L.R.2d, at 216 (1967), and annual pocket supplement. See also Von Wald, "Failure to Remove Ignition Key  the Key to Liability," 14 S.D.L. Rev. 116 (1969); Peck, "An Exercise Based Upon Empirical Data," etc. 1969 Wis. L. Rev. 909; Note: 34 Ia. L. Rev. 376 (1949)).
[3] But see Khoyan v. Turner, supra, 257 A.2d 219.
[4] Even if that datum is discounted substantially for possible defects in the statistical method employed, or in application to New Jersey conditions, its cogency in relation to our problems remains impressive.
[5] This low rate as compared with the 59% figure reflected by the Justice Department Survey of 1966, supra, may well be explained by the reluctance of owners to admit leaving keys in ignition, as contrasted with the probable candor of thieves already convicted  the source of the Justice Department Survey figure. See Peck, op cit., supra, 1969 Wis. L. Rev. at 916.