494 P.2d 1297 (1971)
C. MAC GREGOR, Assignee of Ekco Products, Inc., a corporation of the State of Illinois, Plaintiff-Appellee,
v.
McREKI, INC., a corporation of the State of Colorado and doing business as McDonald's Bakery, Defendant-Appellant.
No. 70-471.
Colorado Court of Appeals, Div. I.
November 9, 1971.
Rehearing Denied December 14, 1971.
William R. Young, Denver, for plaintiff-appellee.
Wagner & Wyers, Dean R. Vanatta, Denver, for defendant-appellant.
Selected for Official Publication.
ENOCH, Judge.
This is a contract case requiring interpretation of two sections of the Uniform Commercial Code (C.R.S. 1963, XXX-X-XXX and XXX-X-XXX). Mac Gregor, plaintiff below, is an assignee of Ekco Products, Inc., and will be referred to as Seller. McReki, Inc., was defendant below and will be referred to as Buyer. Seller brought this action for the contract price of certain goods delivered to Buyer. Buyer counterclaimed for off-setting damages allegedly incurred as a result of late delivery. Trial was to the court and judgment was entered in favor of Seller for the purchase price. Since the court found there was *1298 no breach of contract, it made no determination of the counterclaim.
The existence of a valid contract is admitted by the parties. Buyer further stipulated that it accepted delivery and did not pay the contract price. Buyer does not assert any error as to its liability for the contract price. This controversy is limited to whether Seller breached the contract by late delivery, and whether Buyer preserved its remedies by giving adequate notice of breach to Seller.

I
The evidence before the court on the question of whether a breach occurred showed that on November 8, 1968, Buyer's president telephoned a sales representative of Seller and placed an order for 17 dozen "Big Mac" baking pans. Buyer confirmed this order by a letter of the same date which reads in part as follows:
"This is to confirm our telephone conversation of this afternoon ordering 17 dozen, or 324, of your Ekco Pan #287."
"We understand this is the standard pan used in the manufacture of the Big Mac Sandwich having a 41/16" x 33/16" bottom by 1" deep."
"We also understand that you are going to try to have an approximate December 1st shipping date, * * *." (Emphasis added.)
Buyer sought to introduce evidence of an oral agreement made during the telephone conversation between its president and the sales representative of Seller. This evidence was excluded on the ground that, under C.R.S. 1963, XXX-X-XXX, the letter, being a final written expression, was controlling as to the terms it included. According to Buyer's offer of proof, the testimony would have shown Seller's sales representative told Buyer's president that the pans could probably be shipped as early as the first week in December, but at any rate no later than the end of the second week in December. Delivery was not made until the latter part of January 1969.
The trial court found Seller did not breach the contract by late delivery. This conclusion was based upon its determination that the parol evidence offered by Buyer was not admissible. We hold that the trial court should have considered the parol evidence in its determination as to whether or not there was a breach.
C.R.S. 1963, XXX-X-XXX provides:
"Final written expressionparol or extrinsic evidence.Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included there, may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented:
(a) * * *
(b) By evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement."
As applied to the facts of this case, parol evidence is to be excluded if the writing was intended as a final, complete and exclusive statement of the terms of the agreement. However, if the written expression is not "complete and exclusive", parol evidence is admissible if it relates to additional terms which are not inconsistent with a term of the written agreement.
There is no contention in this case that the letter was intended to be a complete and exclusive statement of the terms of the agreement. The question then is whether the parol evidence of a firm delivery date was inconsistent with the terms of the letter. To be inconsistent, the offered evidence must contradict or negate the written terms. Whirlpool Corp. v. Regis Leasing Corp., 29 A.D.2d 395, 288 N.Y.S.2d 337.
The allegation that Seller promised a delivery date of no later than the end of the *1299 second week of December and that they would try to make delivery by the first week of December is not contradictory to, nor does it negate, the written expression in the letter that Buyer understood that Seller would try to ship by approximately the first of December.

II
The second issue presented by this appeal is whether Buyer preserved its remedies under the Uniform Commercial Code by giving notice to Seller of the alleged breach.
The evidence shows that on November 28, 1968, a sales representative of Seller called Buyer's president to advise him that shipment could not be made until the end of January or the first of February. Buyer's president testified that at that time he notified Seller that late delivery would be a breach of the contract. No further notice of the alleged breach was given at the time of delivery or thereafter.
Seller contends that under C.R.S. 1963, XXX-X-XXX, notice of breach must be given after delivery to be effective. Buyer argues that its notification before delivery was sufficient. C.R.S. 1963, XXX-X-XXX(3) provides:
"Where a tender has been accepted: (a) The buyer must within a reasonable time after he discovers or should have discovered any breach, notify the seller of breach or be barred from any remedy * * *."
The Colorado courts have not yet considered the issue raised by the parties and the jurisdictions which have considered it have reached different conclusions.
In Warren's Kiddie Shoppe, Inc. v. Casual Slacks, Inc., 120 Ga.App. 578, 171 S.E. 2d 643, where the breach was known by the buyer before delivery and notice of the breach was not given until after the delivery, the court held that the notice was effective and inferred that under this section of the code effective notice could be given only after delivery.
However, in a case decided by the Federal District Court in Missouri, Jay V. Zimmerman Co. v. General Mills, Inc., 327 F.Supp. 1198, the opposite result was reached. The facts in the Missouri case are quite similar to the case at hand in that there was a late delivery of goods, it was known by the parties prior to delivery that delivery would be late and the buyer gave notice to the seller before delivery that he considered the contract to be breached. The Federal court held that the notice was effective and in its consideration of Uniform Commercial Code Section 607, which is the same as C.R.S. 1963, XXX-X-XXX, determined that to require renotification after delivery would be unreasonable. We find the result reached in Zimmerman persuasive and well reasoned. We hold that notice given prior to delivery is sufficient to preserve the buyer's remedies and a second notice after acceptance of delivery is not required under the Uniform Commercial Code.
We find this construction best effectuates the purpose of C.R.S. 1963, XXX-X-XXX, and the general obligation of good faith which the Uniform Commercial Code imposes upon the performance and enforcement of contracts. C.R.S. 1963, XXX-X-XXX. Fairness requires that a buyer should inform the seller if he considers the contract breached and wishes to preserve any remedies. Such notice informs the seller the transaction is troublesome and provides him the opportunity to settle the dispute through negotiation. In cases of late delivery, the buyer, as well as the seller, will usually be aware of the breach before tender. Notice given to the seller before delivery in this situation accomplishes the purposes of C.R.S. 1963, XXX-X-XXX. To require renotification after delivery would be to require a useless act.
If after considering the parol testimony which was improperly excluded, the trial court determines that there was a breach of the contract, then the trial court shall determine the merits of Buyer's counterclaim.
*1300 Judgment reversed and cause remanded for a new trial in accordance with this opinion.
SILVERSTEIN, C. J., and COYTE, J., concur.