138 N.J. Super. 264 (1976)
350 A.2d 514
WILLIAM E. HILL AND KAYTRINE HILL, HIS WIFE, PLAINTIFFS-APPELLANTS,
v.
JUDITH A. YASKIN AND CAMDEN PARKING SERVICES, INC., JOINTLY, SEVERALLY AND/OR IN THE ALTERNATIVE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 2, 1975.
Decided January 8, 1976.
*265 Before Judges LYNCH, LARNER and FULOP.
Mr. Barry J. Hockfield argued the cause for appellants (Messrs. Joseph Asbell & Associates, attorneys).
Mr. F. Herbert Owens, III, argued the cause for respondent Judith A. Yaskin (Messrs. Kisselman, Deighan, Montano & Summers, attorneys).
Mr. John A. Fratto argued the cause for respondent Camden Parking Services, Inc. (Messrs. Bleakly, Stockwell & Zink, attorneys).
The opinion of the court was delivered by LARNER, J.A.D.
Plaintiff William E. Hill sustained personal injuries as a result of an automobile accident which occurred on October 8, 1971. The vehicle allegedly responsible for the accident was owned by defendant Judith A. Yaskin and operated by an unknown person who had stolen the same from a commercial parking lot operated by defendant Camden Parking Services, Inc. The trial judge granted summary judgment in favor of both defendants on the basis of the undisputed facts revealed by the police report and depositions.
The operative facts follow. During the morning of October 7, 1971 defendant Yaskin, pursuant to her customary practice, parked her vehicle in the parking lot owned and operated by Camden Parking Services, Inc. Although she was a monthly parker, she had no designated parking space. *266 She left the keys in the car so that it could be moved whenever necessary by an attendant who was present on the lot from 8 A.M. to 5 P.M.
The lot itself was closed regularly at 5 P.M. when the attendant would leave. If there were cars remaining at that time the attendant would leave them unlocked, remove the keys from the ignition and place them either above the sun visor or under the front seat. The inference from this evidence of customary practice is that the same procedure was carried out with respect to the Yaskin vehicle at the end of the work day on October 7.
Yaskin returned to the lot at approximately 7:30 to 8 P.M. and found that her car was gone. It was recovered after it had collided with plaintiff's vehicle on October 8 at 3:15 P.M. with the key in the ignition.
The parking lot, located in a "high crime area," is bounded on three sides by a building and fencing. One side is open to the street.
Plaintiff asserts that the trial judge committed error in granting summary judgment, urging that the foregoing facts spell out a prima facie case of negligence on the part of both defendants and proximate cause connecting that negligence with the occurrence of the accident. Reliance is placed on the opinion of this court in Zinck v. Whelan, 120 N.J. Super. 432 (App. Div. 1972).
In that case the court reversed a summary judgment entered in favor of the owner of a vehicle where plaintiff's injuries were caused by a thief's operation of the vehicle. The basis for the reversal was the conclusion that there was a prima facie basis for a factual finding of negligence and proximate cause arising from the proof that defendant left the unlocked car on a public street during the night with the key in the ignition.
The Zinck opinion is in conflict with an earlier opinion of the Appellate Division in Saracco v. Lyttle, 11 N.J. Super. 254 (App. Div. 1951). See, also, the concurring opinion of Judge Kolovsky in McClain v. Jones, 121 N.J. Super. *267 38, 42 (App. Div. 1972). Since the issue has not been determined by the Supreme Court, we are free to arrive at a conclusion based upon our independent view of the law which should be applied.[1]
The rationale underlying the opinion of the Zinck court is that it is reasonably foreseeable by an owner that a motor vehicle left unlocked on a public street with the key in the ignition creates an enhanced hazard of theft of the vehicle and ensuing negligent operation by the thief, with consequent injury or damage to others on the highway. The court based this conclusion and its disagreement with Saracco on developing crime statistics pertaining to car thefts and accidents involving stolen cars.
With due deference to the scholarly and comprehensive opinion of Judge Conford in Zinck, we respectfully disagree with the holding therein. As observed by Judge Conford, his conclusion represents the minority view of representative jurisdictions in this country, while "a substantial majority" of jurisdictions agree with the principles stated by Judge (later Justice) Proctor for the Appellate Division in Saracco v. Lyttle, supra. See 120 N.J. Super. at 436.
Whether liability of the owner of a stolen vehicle is predicated upon an analysis of duty, negligence or proximate cause and the concomitant doctrine of foreseeability, we are not convinced that it is fair or just to hold such an owner responsible for the consequences of the acts of a car thief. We reach this conclusion particularly because the Zinck doctrine imposes upon an owner not only the duty to foresee that his act will result in theft but also that the felon will be a negligent driver who will cause injury to innocent members of the public. The impact of the statistical findings quoted in Zinck does not persuade us as to the justness of this result.
*268 Doctrinaire principles of tort law attuned to traditional terminology of proximate cause and foreseeability do not suffice to solve the issue involved herein. As observed by Dean Prosser:
* * * As a practical matter, legal responsibility must be limited to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability. Some boundary must be set to liability for the consequences of any act, upon the basis of some social idea of justice or policy.
This limitation is sometimes, although rather infrequently, one of the fact of causation. More often it is purely one of policy, of our more or less inadequately expressed ideas of what justice demands, or of administrative possibility and convenience, none of which had any connection with questions of causation at all. [Prosser, Torts (3d ed. 1964), § 41 at 240-241]
See also, Caputzal v. The Lindsay Co., 48 N.J. 69, 77 (1966); Goldberg v. Newark Housing Auth., 38 N.J. 578, 583 (1962); Seidel v. Greenberg, 108 N.J. Super. 248, 258-261 (Law Div. 1969); Dwyer v. Erie Investment Co., 138 N.J. Super. 93 (App. Div. 1975).
In our opinion, whether liability should attach in this case is and should be controlled by matters of policy, justice and fairness. In applying these criteria we conclude that, in the absence of other distinguishing factors, an owner of a stolen vehicle is not liable for the consequences of the negligent acts of a thief merely because he parked his car with the key therein.[2] For the same reasons, the parking lot operator is also absolved from liability.
If we were inclined to follow the Zinck case we would nevertheless affirm the summary judgment in the case at bar because of the distinguishable facts, namely, that the vehicle was parked on private property in a commercial lot designed for such parking and that the key was not left in the ignition. These two factors differentiate this case from *269 the fact pattern and rationale of Zinck where the car was left on the public street with the key in the ignition. See Sailor v. Ohlde, 71 Wash.2d 646, 430 P.2d 591 (Sup. Ct. 1967); McClain v. Jones, supra, 121 N.J. Super. at 41-42.
Even if we were to apply the Zinck doctrine it would be unreasonable to expand it so as to impose liability on one who undertakes to remove his car from a public street and pays a consideration for the added security and reduced risk by placing it on private property. Query, whether the Zinck court would extend its doctrine to a case where a car owner parks his vehicle in his driveway or elsewhere on private property? In any event, we do not accede to such an extension of liability whether the parking area is part of one's private domain or part of a parcel of land conducted as a parking lot.
In addition, the key was left in the car by the owner as a practical necessity so that the lot operator could carry on his business. The acquiescence of the car owner in the practice of leaving the keys after hours on the sun visor or under the seat is not equivalent to leaving the key in the ignition interdicted in Zinck.
As far as the lot operator is concerned, he has the right to conduct his business during certain hours. Neither his closing at 5 P.M. nor his arrangement to leave the keys to accommodate late customers can be considered in the context of a breach of duty to a third party stranger injured by the intervening act of a felon. The burden of liability under these circumstances is beyond the realm of reason or justice.
Judgment is affirmed.
FULOP, J.S.C., Temporarily Assigned (concurring).
I concur in the affirmance of the summary judgment in favor of the defendants under the special facts of this case. The keys were not left in the ignition; the car was not left on the street, but in a parking lot; the car was unattended for a relatively short time under circumstances making it very *270 difficult to avoid. The facts do not spell out actionable negligence.
I do not concur in Judge Larner's able opinion but would follow Zinck v. Whelan, 120 N.J. Super. 432 (App. Div. 1972) in an appropriate case.
NOTES
[1] See comment on the Zinck opinion in Braitman v. Overlook Terrace Corp., 68 N.J. 368, 381 (1975), and fn. 9 at 382.
[2] Cases such as Barbanes v. Brown, 110 N.J.L. 6 (Sup. Ct. 1932), and Lomano v. Ideal Towel Supply Co., 25 N.J. Misc. 162, 51 A.2d 888 (D. Ct. 1947), are factually distinguishable.