WILLIAM E. HILL AND KAYTRINE HILL, HIS WIFE, PLAINTIFFS-APPELLANTS, v. JUDITH YASKIN AND CAMDEN PARKING SERVICES, INC., JOINTLY, SEVERALLY AND/OR IN THE ALTERNATIVE, DEFENDANTS-RESPONDENTS.

Argued April 5, 1977—Decided December 1, 1977.

*Mr. Barry J. Hockfield* argued the cause for appellants (*Joseph Asbell & Associates, P. A.,* attorneys).

*Mr. F. Herbert Owens, III,* argued the cause for respondent Judith A. Yaskin (*Messrs. Kisselman, Deighan, Montano & Summers,* attorneys).

*Mr. John A. Fratto* argued the cause for respondent Camden Parking Services, Inc. (*Messrs. Bleakly, Stockwell & Zink,* attorneys).

The opinion of the court was delivered by

CLIFFORD, J. Plaintiff William E. Hill,[1] a Camden police officer, was injured on October 8, 1971 when his police car collided with a vehicle which he was pursuing. The vehicle, owned by defendant Judith A. Yaskin, had been stolen the previous day from a parking lot operated by defendant Camden Parking Services, Inc. (Camden Parking). Suit was commenced against Yaskin and Camden Parking bottomed on the admitted fact that the ignition key had been left in the vehicle while it was parked in the lot. Specifically, the Complaint charged that defendant Yaskin "so negligently and carelessly allowed her motor vehicle to be * * * unattended, so as to allow the unknown driver to take and use the same." As to defendant Camden Parking the charge was that the Yaskin vehicle had been left unattended, with the keys placed in the ignition, on the specific instructions of the lot owner, and that this conduct on the part of Camden Parking constituted negligence.

The trial court granted summary judgment in favor of both defendants and the Appellate Division affirmed, 138 *N. J. Super.* 264 (1976). This Court granted certification. 70 *N. J.* 279 (1976).

Aside from the essentially unrevealing police report, the only factual information before us to flesh out the allegations of the Complaint comes from the depositions of the

---

[1] Plaintiff Kaytrine Hill sues for loss of services and consortium of her husband. Reference to "plaintiff" hereafter in this opinion is to plaintiff William Hill.

parties. These reveal that on October 7, 1971, defendant Yaskin parked her car in defendant Camden Parking's lot, located in a high crime area, across the street from the building in which she maintained her law office; that although she was a monthly customer, no designated space was reserved for her; and that she was obliged to leave the key in the ignition so the attendant could move it when necessary. We learn further that inasmuch as the lot closed regularly at 5:00 P.M., at which time the attendant departed, any car remaining in the lot at that hour was left with the key under the floor mat or over the visor, with the car doors unlocked. It is to be inferred that this practice was followed on the day in question.[2] When Yaskin went to the lot at about 7:30 or 8:00 P.M., her car was not there and she reported it stolen. The next day plaintiff, while on patrol duty, spotted the car with some youngsters in it. A chase ensued, ending in a collision between the two vehicles.

The depositions also disclose that defendant Yaskin was familiar with the parking routine described above. In addition, despite the fact that she had an extra set of keys, she "never thought of" instructing the attendant to lock her vehicle in the event she did not return for it before he departed. The manager of Camden Parking admitted in his deposition that in the past there had been problems with vandalism and theft of cars from this lot. And while Yaskin disputed it, there was testimony indicating that her automobile had previously been stolen from this same lot on at least one prior occasion and perhaps twice before.

---

[2]The record is silent as to precisely when the vehicle was stolen, and it is not likely that the exact time can be established absent a reliable statement from the thief. Plaintiff's attorney's argument on the motion for summary judgment was based on the foreseeability of "the enhanced hazard of leaving a key somewhere in a car, *after hours*, in an unattended parking lot * * *." (emphasis supplied). The Appellate Division assumed, 138 *N. J. Super*. at 266, as do we for purposes of this opinion, that the theft occurred after 5:00 P.M. when the lot was unattended.

The Appellate Division held that "in the absence of other distinguishing factors, an owner of a stolen vehicle is not liable for the consequences of the negligent acts of a thief merely because he parked his car with the key therein." 138 *N. J. Super.* at 268. With reference to Camden Parking, that court concluded that the lot operator had the right to conduct its business during certain hours and that neither the 5:00. P.M. closing time nor the arrangement to leave the keys to accommodate late customers could be "considered in the context of a breach of duty to a third party stranger injured by the intervening act of a felon." 138 *N. J. Super.* at 269.

While this Court has not yet had occasion to consider the question, there are two decisions of our Appellate Division which are in direct conflict regarding the liability of a person who parks a car on a public street with the key left in the ignition and the car is thereafter stolen and becomes involved in an accident. In *Saracco v. Lyttle,* 11 *N. J. Super.* 254 (App. Div. 1951) it was held that no jury issue of liability was presented as it was not reasonably to be anticipated that an intermeddler would not only drive the car away but also would later negligently operate it. However, *Zinck v. Whelan,* 120 *N. J. Super.* 432 (App. Div. 1972), decided some 21 years later, rejected *Saracco's* rationale and instead held that a jury question of liability was presented where a defendant parked the car overnight, unlocked, with the key left in the ignition and the car was stolen and became involved in an accident.

In the present case, in absolving the car owner of responsibility, the Appellate Division stated that it disagreed with the decision in *Zinck, supra,* and added that it was not convinced that it was fair or just to hold an owner responsible for the consequences of the acts of a car thief. 138 *N. J. Super.* at 267. We reverse.

What the issue before us comes down to is whether there was a duty owed to plaintiff by either defendant or both of them. Our approach to this question is taken with an

abiding awareness that summary dispositions should be upheld only where there exist no issues of material fact, *Judson v. Peoples Bank & Trust Co.,* 17 *N. J.* 67, 74 (1954), and that all legitimate inferences must be drawn in favor of the party resisting the motion — here, the plaintiff.

In order to ascertain the existence *vel non* of a duty owed by either defendant in the circumstances before us, it is necessary to determine whether or not probable harm to one in the position of this injured plaintiff, a police officer in pursuit of the stolen automobile, should reasonably have been anticipated from defendant's conduct. The issue of foreseeability in this sense must be distinguished from the issue of foreseeability as that concept may be said to relate to the question of whether the specific act or omission of the defendant was such that the ultimate injury to the plaintiff was a reasonably foreseeable result so as to constitute a proximate cause of the injury. Simply put, the distinction is between foreseeability as it impacts on duty determination and foreseeability as it is sometimes applied to proximate cause—a critical distinction too often (because too easily) overlooked.[3] See *Pulka v. Edelman,* 40 *N. Y.* 2d 781, 390 *N. Y. S.* 2d 393, 396, 358 *N. E.* 2d 1019, 1022 (1976). Professor Leon Green, in his tidy little *Rationale of Proximate Cause* (1927), characterizing the failure to make this distinction as "unpardonable" and productive of "interminable confusion," gives us a pointed comment from Salmond, *Law of Torts* at 144 (6th Ed.) : "To treat as a question of remoteness what is really a question as to the existence of negligence or other fault is a fertile source of confusion." Green, *op cit.* at 82–83.

---

[3]Of the heated discussion surrounding this distinction Dean Prosser says that "[t]here is perhaps no other one issue in the law of torts over which so much controversy has raged, and concerning which there has been so great a deluge of legal writing * * *, [T]he question is in no way one of causation and never arises until causation has been established." Prosser, *Torts* § 43 at 250 (4th ed. 1971). See also 2 Harper & James, *Torts* § 20.5 at 1134 (1956).

The following from a basic text is as good a statement as any of the concept we seek to emphasize — foreseeability as a "duty" determinant:

> The probability of injury by one to the legally protected interest of another is the basis for the law's creation of a duty to avoid such injury, and foresight of harm lies at the foundation of the duty to use care and therefore of negligence. The broad test of negligence is what a reasonably prudent person would foresee and would do in the light of this foresight under the circumstances. Negligence is clearly relative in reference to the knowledge of the risk of injury to be apprehended. The risk reasonably to be perceived defines the duty to be obeyed; it is the risk reasonably within the range of apprehension, of injury to another person, that is taken into account in determining the existence of the duty to exercise care. In other words, damages for an injury resulting from a negligent act of the defendant may be recovered if a reasonably prudent and careful person should have anticipated, under the same or similar circumstances, that injury to the plaintiff or to those in a like situation would probably result. The most common test of negligence, therefore, is whether the consequences of the alleged wrongful act were reasonably to be foreseen as injurious to others coming within the range of such acts.
>
>    ＊ ＊ ＊
>
> Foresight, not hindsight, is the standard by which one's duty of care is to be judged. The existence of actionable negligence depends, not upon what actually happened, but upon what reasonably might have been expected to happen. Negligence must be determined upon the facts as they appeared at the time, and not by a judgment from actual consquences which were not then to be apprehended by a prudent and competent man. What was reasonably to be foreseen is generally a question for the jury.
>
>    [57 Am. Jur. 2d *Negligence*
>    § 58 (1970) (footnotes
>    omitted).]

This "duty" aspect of foreseeability was concisely set forth by Judge Conford, in the stolen vehicle context, in *Zinck v. Whelan, supra,* wherein he noted:

> [B]asically the key to duty, negligence and proximate cause in the fact pattern under review is the foreseeability *vel non* to a reasonable man of an unreasonably *enhanced hazard,* when a motor vehicle is left unlocked in a public place with key in the ignition, of both the theft or misappropriation of the vehicle and an ensuing mishandling of it by the taker with death, injury or destruction of

property of others lawfully using the highways as the result. If there is such foreseeability, then, on principle, particularly in light of the minimal social utility of the causative conduct of the possessor of the car, a duty arises toward the members of the public using the highways, its breach is negligence, and the injury is the proximate result of the breach, or so a jury should be permitted to find in the generality of cases.

[*Id.* at 445 (emphasis in original).]

The *Zinck* court fortified its "enhanced hazard" approach by reference to empirical data indicating the danger involved in leaving ignition keys in unattended vehicles. 120 *N. J. Super.* at 446–49. The continuing validity of such data may be recognized by reference to a recent study conducted by the Law Enforcement Assistance Administration [L.E.A.A.]. A report entitled *Preliminary Study of the Effectiveness of Auto Anti-Theft Devices* (Nat'l Inst. of Law Enforcement and Crim. Justice, L.E.A.A., U. S. Dept. of Justice 1975) [hereinafter *LEAA Study*] indicates that in at least 24%[4] of the cases considered, the means used by a thief to mobilize a stolen car was a key. *LEAA Study* at 4–5. The study's conclusion on this point was that

a significant number of the stolen and recovered cars involved keys left in the ignition lock or concealed in the car (under a mat or above the sun visor, for example). It would thus appear that owner/operator action may have directly contributed to a very large proportion of these thefts.

[*Id.* at 4.]

This same study further concluded that the accident rate for stolen cars is 47 times greater than the rate for the general public. *Id.* at 29.

With this impressive array of statistical information as a backdrop, we have no hesitancy in concluding that summary judgment should not have been entered in favor of either de-

---

[4] If one were to take into account those cases where there were no marks on the lock, inferentially showing use of a key, the figure could rise to 57%. *LEAA Study* at 4–5.

fendant. As to defendant Camden Parking, while we accept the proposition that a lot operator has the right to fix the hours of business, we cannot lose sight of the fact that this lot was located in a high crime area and had experienced a history of vandalism. Under these special circumstances the unreasonably enhanced hazards attendant upon the defendant lot's method of operation are clear. Camden Parking had a duty, which a jury might determine from all the evidence was breached, to protect users of the highways from the action of a thief who uses the keys left in the vehicle to mobilize it and then to operate it in a negligent fashion, resulting in plaintiff's injuries. See *Restatement* (Second) *of Torts* § 302B (1965); *Hergenrether v. East*, 61 *Cal.* 2d 440, 39 *Cal. Rptr.* 4, 393 *P.* 2d 164 (1964); but see *Richards v. Stanley*, 43 *Cal.* 2d 60, 271 *P.* 2d 23, 25 (1954); *Strauch v. Gonzales*, 494 *P.* 2d 1300, 1301 (Colo. Ct. App. 1972).

As against any claim that what we have said with regard to defendant Camden Parking serves to undercut this Court's pronouncement in *Goldberg v. Housing Auth. of Newark*, 38 *N. J.* 578, 583 (1962), that neither a municipal housing authority nor the owner of a multi-family dwelling has any duty to provide police protection, we do not at all suggest that the parking lot operator in this case had to make such provision. A number of alternative protective measures come to mind, however, some of which are assuredly in effect elsewhere. One not too drastic step would be to require owners to return by five o'clock on pain of being locked out of their cars, thus requiring them to carry the usually available extra set of keys. Another would be to provide for a key drop. Neither of these would appear to require expenditure of inordinate sums of money, certainly not when viewed against the very serious dangers sought to be avoided; and the class of patrons, automobile drivers all, who might ultimately bear some or all of whatever additional cost might accompany any of these protective measures clearly is not comparable to the "segment of the citizenry * * * least able to

bear" the additional cost contemplated in *Goldberg, supra,* 38 *N. J.* at 591.

As to defendant Yaskin a similar duty should be borne by her as is cast upon the parking lot. It does not appear — not yet, at least, in the present posture of the record — that the likelihood of theft and the subsequent unhappy occurrence was any the less foreseeable by Yaskin than by her codefendant. While it might be quite a different situation had the theft occurred prior to 5:00 P.M., this defendant knew the lot closed at 5:00 P.M., that her vehicle with the keys in it was unattended thereafter, and for aught we know at this point may have been fully aware of the character of the neighborhood. Once we acknowledge *conceptually* the existence of a duty predicated on foreseeability of an increased hazard of theft and subsequent mishandling of an automobile, it should then become the jury's task to determine whether under the facts of this case that duty was violated by defendant Yaskin and her conduct was a substantial causative factor in the plaintiff's injury.

To be more specific, we would anticipate that at some point in the trial defendant Yaskin would be interrogated about her awareness of the unsavory character of the neighborhood in which she parked her vehicle and about her knowledge of any previous acts of vandalism. (Significantly, for our purposes in reviewing the propriety of summary judgment in her favor, there was not one question put to her on depositions regarding these subjects other than those directed to other incidents of theft of her own vehicle.) The trial judge would, at the appropriate time, instruct the jurors that they should consider whatever information might be elicited in response to such questions, together with all other evidence on the subject, including defendant Yaskin's awareness of and acquiescence in the *modus operandi* of the lot and her possession of an extra set of keys, in determining whether she should have foreseen that her conduct unreasonably enhanced the hazard of theft of her automobile, thus amounting to a breach of her duty. If so, and if plaintiff's injury proximately

resulted therefrom, liability would follow. Mere statement of these propositions demonstrates ample room as well for a defendant's verdict.

Finally, it should be acknowledged that our search here is essentially one for desirable policy. In this area, the issue being whether the plaintiff William Hill's injured interest is one which falls within the protection of the rule he invokes, our function is "altogether an excursion into the domain of policy." See Green, *op. cit.* at 66, 75. Or, as put more succinctly by Chief Justice Weintraub, "[w]hether a duty exists is ultimately a question of fairness." *Goldberg v. Housing Auth. of Newark, supra,* at 583. As we view the matter, there is nothing unfair in requiring defendants to go to trial on the question of whether they should have foreseen that the leaving of Yaskin's automobile unattended under the circumstances recited above unreasonably increased the hazard of its theft and subsequent mishandling — particularly where that hazard could have so easily been substantially reduced, if not entirely eliminated, by resort to the extra set of keys, a minimal burden at worst.

Judgment reversed. The cause is remanded to the Law Division for trial as to both defendants. Costs to abide the event.

SULLIVAN, J. (concurring in part and dissenting in part). I am in full agreement with the part of the majority opinion which holds that summary judgment should not have been granted in favor of Camden Parking. Its method of doing business gave rise to the foreseeable risk that a vehicle left in its custody would be stolen and thereafter become involved in an accident. Therefore it had a duty to take reasonable precautions to guard against this risk. Whether it breached that duty was a jury question.

I part company with the majority when it holds that Judith Yaskin, the owner of the car, had a duty similar to that cast upon the parking lot. Legal responsibility for the consequences of leaving car keys in a vehicle depends on cir-

cumstances. It is one thing to park a car overnight on a public street with the car doors unlocked and the key left in the ignition, *Zinck v. Whelan*, 120 *N. J. Super.* 432 (App. Div. 1972); it is something else to park a car in a garage or parking lot and be required by the attendant to leave the car keys in order to facilitate the shifting of vehicles.

The majority apparently bases its holding on the assumption that the car was stolen from the lot after 5:00 P.M. when the attendant left. It suggests that "it might be quite a different situation had the theft occurred prior to 5:00 P.M." In fact, there is no evidence indicating when the car was taken and, in my opinion, it is equally inferable that the theft took place while the attendant was on duty but was moving cars or his attention was otherwise distracted.

Moreover, since the majority's legal position seems to be that the leaving of the key in the car and the foreseeable consequences therefrom give rise to the duty of care which it would impose on the car owner, the presence or absence of an attendant on the lot would not be controlling and would only make the car owner's conduct less negligent or more negligent.

Many parking lots require that the keys be left with the car in order to facilitate the business of the lot. Absent an extreme situation, not here shown, I would hold that a car owner who parks her car in a parking lot and leaves the key in the ignition at the direction of the attendant is not responsible as a matter of law for the consequences flowing from a theft of the car and its operation by the thief. I would hold that the parking lot requirement was the controlling causal factor.

Justices MOUNTAIN and PASHMAN join in this opinion.

*For reversal and remandment*—Chief Justice HUGHES and Justices CLIFFORD, SCHREIBER and HANDLER—4.

*Concurring in part and dissenting in part*—Justices MOUNTAIN, SULLIVAN and PASHMAN—3.