**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2846-17T4

CURTIS MCCANTS and
CLARINE MCCANTS,

      Plaintiffs-Appellants,

v.

MACK KENNEDY,
ANNETTE KENNEDY,
and CLEVON MCCANTS,

      Defendants-Respondents.

_____

> Argued January 29, 2019 – Decided February 28, 2019
>
> Before Judges Hoffman and Firko.
>
> On appeal from Superior Court of New Jersey, Law Division, Essex County, Docket No. L-3385-16.
>
> Michael N. Beukas argued the cause for appellants (Davis, Saperstein & Salomon, PC, attorneys; Michael N. Beukas, of counsel and on the briefs; Kelly A. Conlon, on the briefs).
>
> George B. Keahey argued the cause for respondent Annette Kennedy (Venema, Proko, Keahey & Dalvet, attorneys; Jeanne M. Proko, on the brief).

PER CURIAM

Plaintiffs Curtis McCants (McCants) and Clarine McCants appeal the grant of summary judgment to defendants, Mack Kennedy,[1] Annette Kennedy (Kennedy), and Clevon McCants (Clevon), of their slip and fall personal injury matter involving defective steps and ice.[2] Because we find that material disputed issues of fact existed, we now reverse and remand for further proceedings.

I.

Kennedy and her husband owned the subject three family home in Newark at the time of McCants' slip and fall accident on January 18, 2015. McCants and his wife have resided in the second floor apartment since 2003, without a written lease, and their son, Clevon, resides on the third floor.[3] On the day of the accident, McCants left his apartment and attempted to descend the front steps, which are made of bricks. Freezing rain was coming down at the time. He contends that while holding the handrail, his left foot slipped; he tried to place his right foot on one of the brick steps to catch his fall, but the brick got loose

---

[1] Regrettably, Mr. Mack Kennedy passed away during the pendency of these proceedings.

[2] The civil presiding judge entered a subsequent order on February 26, 2018, dismissing the case with prejudice for failure to appear at trial.

[3] Clevon is not involved in this appeal.

A-2846-17T4

and broke, causing him to lose his balance and fall. At his deposition, McCants testified that he purposefully stepped on that particular brick because there was "no issue" with it. The front steps were the only means of ingress and egress from McCants' apartment. As a result of his fall, McCants suffered a displaced and comminuted three-part proximal humerus fracture of the right arm and shoulder, requiring surgery.

Clevon testified at his deposition that prior to his father's accident, he verbally complained to Kennedy that the steps "were chipped, cracked and some of the bricks [were] loose[,]" and "when you step[ped] on it, you could easily twist your ankle." He further testified "when the stairs were messed up, there was nowhere safe [to walk] . . . because until you got down there, you had to hold on to the rail . . . at all times." In the summer of 2014, Clevon showed Kennedy the steps that needed repair and pointed out defective areas. Kennedy testified at her deposition that she visited the property weekly, and on a daily basis during the summer preceding the accident, to perform yardwork, clean up debris, and to mow the lawn.

In order to address the defective front steps, she hired Eugene Sutton, a contractor, to repair them on two occasions prior to McCants' fall. According to Kennedy, Sutton repaired cracks, chipped steps, and replaced some of the

3

bricks.[4] Most of the work was performed on the first three bottom levels of the stairs according to Sutton, who was deposed, and "not as much" on the upper four levels where McCants fell. Photographs of the steps were served during discovery. Clevon was shown the photographs at his deposition and he commented that they were misleading because bricks that appeared stable and secure would "just come out when you step[ped] on it." Sutton testified that he removed and replaced "all loose bricks," and gaps in between bricks were "repaired and pointed up." Kennedy also contends that she is absolved from liability as to the steps because she hired Sutton to repair them, and that she had no duty to clear snow and ice while freezing rain was falling at the time of McCants' fall.

Plaintiffs allege that as the landowner, Kennedy had an affirmative duty to remove snow and ice from the steps, and to repair the defective steps since she was clearly on notice of same. The parties retained experts to opine as to the condition of the steps, the precipitation at the time of the accident, and proximate cause. Plaintiffs' expert, Kenneth J. Stoyack, an architect and planner, opined that McCants slipped and fell because of "icy conditions present

---

[4] During oral argument, counsel acknowledged that Kennedy's home is over one hundred years old.

A-2846-17T4

on the stair treads and surfaces[,] and broken . . . structurally unsound brick masonry treads." He further concluded that "[t]he variations in the riser height and tread depth are attributed to the loose and deteriorating brick masonry. Riser heights and tread depths were not uniform because of deteriorating masonry." He explained that:

> [t]he brick masonry treads required repointing and replacement, brick mortar joints required new mortar[s], and areas of open brick mortar joints required repointing or removal of the brick and replacement with new mortar joints. All of these conditions represent maintenance and repair required on the subject exterior stairway. [It] appeared structurally unsound and dangerous.

In relying upon the Multiple Dwelling Code,[5] he concluded that the steps were "not maintained in a safe condition," thereby creating a hazard, unrelated to the precipitation event in progress at the time of McCants' fall.

Kennedy's expert, Mark S. Suchecki, a professional engineer, came to the opposite conclusion and stated that the subject brick had an "internal flaw," not visually apparent upon inspection. Suchecki criticized Stoyack for not providing an "explanation or opinion as to the mechanism of the brick fracture . . . ." Suchecki opined that because the brick that broke was "not due to lack of

---

[5] N.J.A.C. 5:10-6.1, -6.3, -6.4.

inspection or maintenance of the steps by . . . Kennedy[,]" no duty of care was breached. No analysis of the Multiple Dwelling Code or any statutes was proffered by Suchecki.

Following discovery, Kennedy filed for summary judgment, arguing plaintiffs failed to produce evidence in support of their claims. After oral argument, the motion judge granted the motion and set forth his reasons on the record finding:

> There's no duty on the landlord - - or the landowner, in a storm to go out and every two seconds sweep off the stairs to keep . . . the snow or ice from accumulating.
>
>     . . . .
>
> The issue here is, - - by - - the plaintiff's own testimony, the plaintiff comes, steps down on a - - brick that he thought was solid and believed to be solid, and the end of the brick falls - - cracks off, and then - - as a result of that - - there's a fall, and the plaintiff is injured.
>
> I don't see there's a duty here. I don't see that the notice issue is here. The stairs are not in the best condition, but that's not the point. The point here, is that apparently from the reasonable inferences against the movant . . . . I don't see how there's a breach of a duty here.
>
> That being the case, I'll grant the application for summary judgment.

A-2846-17T4

On appeal, plaintiffs argue that the motion judge erred in granting summary judgment because there exists genuine issues of material fact as to whether Kennedy owed a non-delegable duty of care to McCants to properly maintain the residence by clearing snow and ice accumulations and repairing the brick steps, and as to whether she failed to comply with the New Jersey Hotel and Multiple Dwelling Law. Plaintiffs further argue that the motion judge improperly expressed his personal opinions relative to masonry principles in granting summary judgment, and he failed to consider the expert opinions as raising triable issues of fact. We agree.

II.

In reviewing the grant or denial of summary judgment, we apply the same standard which governs the trial court under Rule 4:46-2(c). Perrelli v. Pastorelle, 206 N.J. 193, 199 (2011); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 539-40 (1995); Chance v. McCann, 405 N.J. Super. 547, 563 (App. Div. 2009) (citing Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A., 189 N.J. 436, 445-46 (2007)). Summary judgment is granted where the record demonstrates "no genuine issue as to any material fact challenged and . . . the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c); see Henry v. N.J. Dept. of Human Servs., 204 N.J. 320, 329-30 (2010); see

A-2846-17T4

also <u>Brill</u>, 142 N.J. at 540. We review issues of law de novo and accord no deference to the trial judge's conclusions on issues of law. <u>Nicholas v. Mynster</u>, 213 N.J. 463, 478 (2013).

"To sustain a cause of action for negligence, a plaintiff must establish four elements: '(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages.'" <u>Townsend v. Pierre</u>, 221 N.J. 36, 51 (2015) (quoting <u>Polzo v. Cty. of Essex</u>, 196 N.J. 569, 585 (2008)). "It is generally plaintiff's burden to prove not only that defendant was negligent, but also that defendant's negligence was a proximate cause of the injuries and damages suffered." <u>O'Brien (Newark) Cogeneration, Inc. v. Automatic Sprinkler Corp. of Am.</u>, 361 N.J. Super. 264, 274 (App. Div. 2003) (citing <u>Paxton v. Misiuk</u>, 34 N.J. 453, 463 (1961)).

"The test of negligence is 'whether the reasonably prudent person at the time and place should recognize and foresee an unusual risk or likelihood of harm or danger to others.'" <u>Scully v. Fitzgerald</u>, 179 N.J. 114, 125-26 (2004) (quoting <u>Trentacost v. Brussel</u>, 82 N.J. 214, 222 (1980)). Summary judgment may be appropriate if there is no legal basis for finding the existence of a duty or where defendants were not the proximate cause of plaintiff's injuries.

Foreseeability as a determinant of duty must "be distinguished from foreseeability as a determinant of whether a breach of duty is a proximate cause

A-2846-17T4

of an ultimate injury." Clohesy v. Food Circus Supermarkets, 149 N.J. 496, 502-03 (1997). In the context of the duty determination, foreseeability is

> the knowledge of the risk of injury to be apprehended. The risk reasonably to be perceived defines the duty to be obeyed; it is the risk reasonably within the range of apprehension, of injury to another person, that is taken into account in determining the existence of the duty to exercise care.
>
> [Id. at 503 (quoting Hill v. Yaskin, 75 N.J. 139, 144 (1977)).]

In other words, the probability of injury to another is the basis for the creation of a duty to avoid such injury, and therefore the test of negligence is whether "a reasonably prudent and careful person should have anticipated, under the same or similar circumstances, that injury to the plaintiff or to those in a like situation would probably result." Kuzmicz v. Ivy Hill Park, 147 N.J. 510, 533 (quoting Hill, 75 N.J. at 144). Accordingly, "[f]oreseeability in the proximate cause context relates to remoteness." Clohesy, 149 N.J. at 503.

In the context of proximate cause, on the other hand, foreseeability "relates to 'the question of whether the specific act or omission of the defendant was such that the ultimate injury to the plaintiff' reasonably flowed from defendant's breach of duty." Ibid. (quoting Hill, 75 N.J. at 143).

As to the former, it is well-settled that a landlord has a duty to exercise reasonable care to keep the premises in a reasonably safe condition to guard against foreseeable dangers arising from the use of the premises. Coleman v. Steinberg, 54 N.J. 58, 63 (1960); Scully, 179 N.J. at 118. Foreseeability of an unreasonable risk of harm to the reasonable person is the crucial factor in determining whether a duty exists. Trentacost, 82 N.J. at 223; Jensen v. Schooley's Mountain Inn., Inc., 216 N.J. Super. 79, 81 (App. Div. 1987) (citing Caputzal, 48 N.J. at 75). In other words, a landlord's duty arises when foreseeable harm exists that falls within the landlord's control. Scully, 179 N.J. at 123 (citing Braitman v. Overlook Terrace Corp., 68 N.J. 368, 382-83 (1975)).

Thus, our courts have recognized a duty to exercise reasonable care to prevent foreseeable danger arising out of numerous circumstances. See e.g., id. at 126-27 (recognizing a duty to guard against the risk of fire); Trentacost, 82 N.J. at 223 (recognizing a duty to ensure "adequate security against foreseeable criminal conduct"); Coleman, 54 N.J. at 63-64 (recognizing a duty of reasonable care with respect to the maintenance and operation of heating systems); Skupienski v. Maly, 27 N.J. 240, 248 (1958) (recognizing a duty of reasonable care in the maintenance of private sidewalks); Dwyer v. Skyline Apartments,

Inc., 123 N.J. Super. 48, 52 (App. Div. 1973) (recognizing a duty of reasonable care in the maintenance of plumbing and electrical equipment).

                                        III.

We first address plaintiffs' argument that there are genuine issues of material fact precluding summary judgment in favor of Kennedy. N.J.A.C. 5:10-6.1 requires owners of multiple dwelling units to be "responsible at all times for keeping all parts of the premises occupied . . . clean and free of infestation and hazards to the health or safety of occupants and other persons in or near the premises[,]" and N.J.A.C. 5:10-1.6(c) requires owners to uphold "at all times . . . the safe maintenance of the building . . . ." N.J.A.C. 5:10-6.4(a) requires that the

> exterior of the premises and all structures thereon shall be kept free from all nuisances, insanitary conditions, and any hazards to the safety or health of occupants . . . and any of the foregoing conditions shall be promptly removed and abated by the owner or operator. It shall be the duty of the owner or operator to keep the premises free of such conditions which include, but are not limited to the following:
>
>     . . . .
>
> Holes, excavations, breaks, projections, obstructions, litter, icy conditions, uncleared snow and excretion of pets and other animals on paths, walks, driveways, parking lots and parking areas and other parts of the premises. Holes and excavations shall be filled and

repaired, <u>walks and steps replaced</u> and other conditions removed where necessary to eliminate hazards or insanitary conditions with reasonable dispatch upon their discovery . . . .

[N.J.A.C. 5:10-6.4(a)(4) (emphasis added).]

Construing the facts in the light most favorable to plaintiffs as the non-moving parties, we disagree with the motion judge that there are no genuine issues of material fact. We note the conflicts in the expert reports on several key facts. Stoyack opined that Kennedy had a duty to maintain the exterior steps, clear ice and snow, ensure that the bricks and mortar joints were structurally sound and properly repaired or reconstructed. Her failure to fulfill this responsibility "was a blatant violation" of New Jersey maintenance regulations according to Stoyack. In contrast, Suchecki opined that "[t]here was no significant time period which anyone could have cleaned the ice from the steps prior to [McCants'] reported slip and fall[,]" that there was an undetectable, latent defect with the brick, and that Stoyack did not substantiate his opinions.

When there are competing expert opinions, summary judgment is inappropriate because "a trial court should never decide on its merits a dispute on which a rational jury could go either way." Pressler & Verniero, <u>Current N.J. Court Rules</u>, cmt. 2.3.2 on <u>R.</u> 4:46-2 (2019); <u>See</u> <u>Davin, LLC v. Daham</u>, 327 N.J. Super. 54, 71 (App. Div. 2000) (holding that summary judgment on a legal

malpractice claim should have been denied when there were conflicting expert certifications).  In light of the factual dispute arising from the conflicting expert reports, summary judgment was inappropriate.

## IV.

We next address plaintiffs' argument that the motion judge improperly expressed his own personal opinions as to masonry.  In his oral decision, the judge stated:

> I'll give it to you, if in fact he stepped on it and the whole brick fell out [be]cause the mortar wasn't there or whatever, I'll give you that, that clearly there's a - - there's an issue with regard to prior notice existing.  But if he steps down on a brick that - - previously was fine, and the end of the brick cracks off itself, as [t]he [c]ourt notes for the record, these stairs, apparently the treads, if you will, of the stairs, to a certain extent, the bricks do stick out slightly as - - I'm familiar with masonry, stairs are built that way, that the tops - - the treads, if you will are - - are fanned out along this particular set of stairs, and that they - - occasionally there's - - the edges of the brick - - the edge of the tread, when he would step on, sticks out slightly, [be]cause I think that's . . . not uncommon.

A-2846-17T4

In Gilhooley v. Cty. of Union, 164 N.J. 533, 545 (2000),[6] our Supreme Court reversed the trial judge's granting of summary judgment because he imposed "his own personal standard" to determine the merits of the case. There, the trial judge "failed to apply the appropriate summary judgment standard . . . [and] never determined that no rational fact-finder could render a judgment in favor of [plaintiff]." Ibid. Here, the motion judge imposed his personal knowledge and experience of brick masonry instead of weighing the factual and expert testimony and evidence, and he found that a jury could not render a judgment in favor of plaintiffs.

"The 'judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Brill, 142 N.J. at 540 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). The question of whether a duty was breached, foreseeability, and proximate cause, are "peculiarly within the competence of a jury." Hambright v. Yglesias, 200 N.J. Super. 392, 396 (App. Div. 1985). Notwithstanding these

---

[6] This case involved permanent disfigurement to plaintiff. The judge determined that the plaintiff's appearance from the scar was not materially impaired and that she "did not suffer a permanent disfigurement that [was] substantial." Gilhooley, 164 N.J. at 545.

A-2846-17T4

principles, the motion judge reached the merits of the action by interjecting his personal opinions, warranting reversal.

It is fundamental, black-letter law that where there are disputes of material fact, summary judgment is inappropriate. See Rowe v. Mazel Thirty, LLC, 209 N.J. 35, 50 (2012). Since we conclude that plaintiffs raised material factual disputes that made summary judgment inappropriate, we reverse and remand. We also vacate the February 26, 2018 order and reinstate plaintiffs' complaint. Plaintiffs' remaining arguments do not need to be addressed in light of our decision.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2846-17T4