**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0315-22

RICHARD FINALDI and
BONNIE FINALDI, h/w,

     Plaintiffs-Appellants,

v.

MATTHEW KNIGHT and EAN
HOLDING, LLC,

     Defendants,

and

CORNUCOPIA LOGISTICS, LLC,
AMAZON LOGISTICS, INC., and
AMAZON FULFILLMENT
SERVICES, INC.,

     Defendants-Respondents.

_____

Argued December 5, 2023 – Decided January 3, 2024

Before Judges Whipple, Mayer and Paganelli.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-2209-18.

Corey A. Dietz argued the cause for appellants (Brach Eichler, LLC, attorneys; Edward P. Capozzi and Corey A. Dietz, on the briefs).

Richard Francis Connors, Jr. argued the cause for respondent Cornucopia Logistics, LLC (Tompkins, McGuire, Wachenfeld & Barry LLP, attorneys; Richard Francis Connors, Jr., and Kimberly Dawn McDougal, on the brief).

Ahmed J. Kassim argued the cause for respondents Amazon Logistics, Inc., and Amazon Fulfillment Services, Inc. (Sills Cummis & Gross, PC, and Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, attorneys; Beth S. Rose, Ahmed J. Kassim, and Gina Calabria, on the brief).

PER CURIAM

During the early morning hours of January 27, 2017, plaintiff Richard Finaldi was driving through an intersection in Linden. At the same time, a man driving a delivery van nodded off and drove through the red light, colliding with Richard. Richard was seriously injured.

Plaintiffs Richard and Bonnie Finaldi appeal from the trial court's grant of summary judgment in favor of the van's lessee, defendant Cornucopia Logistics, LLC (Cornucopia), denial of their motion for reconsideration, and grant of summary judgment in favor of defendants Amazon Logistics, Inc., and Amazon Fulfillment Services, Inc. (collectively, Amazon). For the reasons that follow, we affirm.

Since 2014, Cornucopia had an agreement with Amazon to deliver groceries ordered through Amazon Fresh as an independent contractor. Under its agreement, Cornucopia had exclusive responsibility for its personnel and exclusive control over its policies relating to wages, hours, working conditions, and other employment conditions. Delivery vans—leased to Cornucopia by defendant EAN Holdings, LLC (EAN)—were stored at the Amazon Fulfillment Center facility in Avenel, where Cornucopia also had an office. Under the agreement, Cornucopia would provide, operate, maintain, and be responsible for all motor vehicles.

In 2017, Cornucopia had several employees at the Avenel facility, including a senior operations manager, Richard Bello; an operations manager, Carlos Gonzalez; a fleet coordinator; four dispatchers; and around thirty drivers each for the morning and night shifts.

There was one dispatcher for each shift. The drivers would report to work and clock in using their fingerprints, and the dispatcher would take attendance and assign the drivers their routes. Each time a driver clocked in, the dispatcher would give them a handbag containing a key to a van, an EZPass, vehicle registration and insurance, and a "rabbit." The rabbit was a scanner, provided by Amazon, that allowed drivers to scan each package in and out; it also acted

3

as a GPS, a camera, and calling support. The rabbit additionally allowed supervisors to see where each driver had dropped off their last package.

When the vans were not in use, the keys were kept in a cabinet behind the dispatch table. The dispatcher was supposed to lock the cabinet after checking in the drivers and giving them their handbags. Each dispatcher had a key to the cabinet, as well as Gonzalez and Bello. It was standard operating procedure for the dispatcher to log each key that was given to the drivers and take inventory of those keys. The dispatcher would again count the keys after the drivers returned. Ultimately, the fleet coordinator was responsible for knowing where each of the vehicles was at a given time.

If a dispatcher discovered a key was missing after taking inventory, they would see if the vehicle was in the parking lot. If it was not, they would notify Gonzalez or Bello.

Matthew Knight, one of Cornucopia's dispatchers, fell asleep driving the Cornucopia delivery van that he stole and went through a red light, injuring plaintiff. Knight initially worked for Cornucopia as a driver, but then, after his license was suspended, he moved to dispatcher—a position which did not require driving—so he could continue to work at Cornucopia.

4

Knight had stolen the van the day before the accident to assist his mother in moving. His plan was to return the van to the facility in time for the next shift. Knight entered the facility as if he was going to work, found the cabinet with the keys to the vans unlocked, and took one of them. Had the cabinet been locked, he testified, he would not have taken the van because ordinarily Knight only had access to the key when he was on duty as a dispatcher. He drove the van off the lot, through the main gate guarded by Amazon security workers. Only after the accident did Knight inform Gonzalez that he took the van. Thus, no one at Cornucopia knew the van was missing until after the accident. According to Bello, this was the first time, as far as he knew, that an employee had used a van for personal use.

The Finaldis[1] filed suit on June 25, 2018, against Knight, EAN,[2] and several fictitiously named individuals and corporations. Plaintiffs amended their complaint to add Cornucopia as a defendant, clarifying its position as Knight's employer. In a second amended complaint, plaintiffs included Amazon as defendants. They asserted five claims: negligence against Knight, EAN,

---

[1] Bonnie asserts a per quod claim.

[2] The parties stipulated to the dismissal of Knight and EAN as defendants on October 19, 2022.

5

Cornucopia, and Amazon; negligent hiring, retention, and training against Cornucopia and Amazon; negligent entrustment and negligent supervision against EAN, Cornucopia, and Amazon; and loss of consortium.

Amazon moved for summary judgment, and plaintiffs consented to the dismissal of the negligent hiring, retention, and training claim and negligent entrustment and supervision claims against Amazon, since there was no evidence Knight was an Amazon employee. As to the general negligence claim, plaintiffs argued Cornucopia was an independent contractor over which Amazon retained enough control to render it liable for Cornucopia's actions. The court denied summary judgment as to the general negligence and loss of consortium claims.

Cornucopia moved for summary judgment. Plaintiffs consented to dismissal of vicarious liability claims under the theory of respondeat superior. On March 29, 2022, the court granted summary judgment to Cornucopia as to the negligence and negligent hiring and retention claims. Addressing the general negligence claim, the court concluded Cornucopia owed no duty to plaintiffs because Cornucopia "had [no] reason to know . . . that there was an enhanced risk of harm to a third party by hiring Knight to work as a dispatcher." The court also found "at the time of the accident, there was no . . . history of Cornucopia

6

employees stealing vehicles." Further, Cornucopia had adequate security measures in place.

The court also concluded that plaintiffs failed to establish Cornucopia's actions were the proximate cause of plaintiff's injuries. The court explained "Knight was not working at the time of the accident[,]" nor was he using the vehicle with permission. Cornucopia "took reasonable precautions to prevent against such actions." The court declined to set a precedent where "employers would be liable for all of the senseless and unanticipated actions of their employees."

The court found it too attenuated to link the administrative suspension of Knight's license with the January 2017 accident and, thus, rejected the negligent hiring and retention claims. Knight's license suspension did not put Cornucopia on notice that he would disregard its policies and take one of its vehicles for his own personal use.

Plaintiffs moved for reconsideration, asserting the court failed to consider probative, competent evidence, particularly the expert report of Joseph Vanderslice who opined defendants substantially breached their duty to undertake reasonable care to provide a safe facility and community in which their employees operated. Plaintiffs also argued the policies and procedures

 A-0315-22

Cornucopia had in place were ineffective because they were not followed, and to find in Cornucopia's favor would be contrary to public policy.

The court rejected these arguments, noting it was not the expert's function to determine whether there was a duty, but the court's, and the court subsequently found Cornucopia owed no duty. Further, the court reiterated its earlier stance that finding in favor of plaintiffs would also be contrary to public policy because it would render employers liable for all the "senseless and unanticipated actions of their employees." Finding no basis to grant reconsideration, the court denied plaintiffs' motion.

Thereafter, Amazon moved for reconsideration of the November 2021 order denying summary judgment. Amazon argued that, because the court granted Cornucopia's motion for summary judgment, finding no basis for liability as to Cornucopia, the court must also dismiss the case against Amazon. The court agreed, found the motion was not untimely, and granted it. This appeal followed.

We review a trial court's decision to grant or deny a motion for reconsideration under the abuse of discretion standard. Kornbleuth v. Westover, 241 N.J. 289, 301 (2020). We review a grant or denial of summary judgment de novo, applying the same standard as the trial court. Templo Fuente De Vida

Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (citing Mem'l Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 524 (2012)).

"To sustain a cause of action for negligence, a plaintiff must establish four elements: '(1) a duty of care[;] (2) a breach of that duty[;] (3) proximate cause[;] and (4) actual damages.'" Townsend v. Pierre, 221 N.J. 36, 51 (2015) (quoting Polzo v. Cnty. of Essex, 196 N.J. 569, 584 (2008)). The plaintiff must establish those elements "by some competent proof." Ibid. (quoting Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014)).

The threshold question is whether Cornucopia owed a duty to plaintiffs. "The question of whether a duty exists is a question of law." Franco v. Fairleigh Dickinson Univ., 467 N.J. Super. 8, 25 (App. Div. 2021) (citing Robinson v. Vivirito, 217 N.J. 199, 208 (2014)). "Any common law duty imposed by [a c]ourt must 'satisf[y] an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy.'" Est. of Narleski v. Gomes, 244 N.J. 199, 213 (2020) (second alteration in original) (quoting Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439 (1993)). In order for a court to impose a duty, "there must be a foreseeable risk of harm." Franco, 467 N.J. Super. at 26 (citing J.S. v. R.T.H., 155 N.J. 330, 337 (1998)).

A-0315-22

When determining whether a party owed a duty to another, foreseeability refers to

> the knowledge of the risk of injury to be apprehended. The risk reasonably to be perceived defines the duty to be obeyed; it is the risk reasonably within the range of apprehension, of injury to another person, that is taken into account in determining the existence of the duty to exercise care.
>
> [Clohesy v. Food Circus Supermarkets, Inc., 149 N.J. 496, 503 (1997) (quoting Hill v. Yaskin, 75 N.J. 139, 144 (1977)).]

The trial court determined Cornucopia owed no duty to plaintiffs because it was not foreseeable Knight would steal a van from Cornucopia. Cornucopia had procedures in place to prevent and detect theft. The delivery vans were parked in a lot with a security gate, and—according to standard procedure—the dispatcher took inventory of the keys twice each shift, locking the cabinet when not in use. Further, there was no prior history of employees stealing vans or borrowing them for their own personal use.

Plaintiffs do not dispute these procedures were in place but assert, because Cornucopia's employees did not follow these procedures, it owed a duty to plaintiffs. Plaintiffs argue they are not seeking to impose any duty on Cornucopia that Cornucopia had not already imposed on itself by securing the keys and taking inventories of the keys multiple times throughout the shift.

10

Plaintiffs rely on Hill v. Yaskin, 75 N.J. 139 (1977); however, that case is distinguishable. There, the plaintiff, a police officer, was injured while pursuing a car stolen from the parking lot of one of the defendants, a Camden parking lot operator. Id. at 140. Every day at 5:00 p.m., the parking lot closed and the attendant left. Id. at 141. The lot's policy was that, if a customer had not returned to pick up their car by that time, the car would be left unlocked, and the keys placed under the floor mat or above the visor. Ibid. A patron familiar with this procedure, also a defendant, left her car in the lot and did not return until 7:30 or 8:00 p.m. Ibid. When she realized her car was not in the parking lot, she reported the car stolen. Ibid. The plaintiff spotted the car the next day and a chase ensued, resulting in the collision that injured him. Id. at 140-41.

The Supreme Court found that the grant of summary judgment in favor of the defendants was improper. Id. at 145.

> As to [the parking lot operator], while we accept the proposition that a lot operator has the right to fix the hours of business, we cannot lose sight of the fact that this lot was located in a high[-]crime area and had experienced a history of vandalism. Under these special circumstances the unreasonably enhanced hazards attendant upon the defendant lot's method of operation are clear. [The parking lot operator] had a duty, which a jury might determine from all the evidence was breached, to protect users of the highways from the action of a thief who uses the keys left in the

vehicle to mobilize it and then to operate it in a negligent fashion, resulting in plaintiff's injuries.

[Id. at 146.]

The Court found the patron owed a similar duty, as "the likelihood of theft and the subsequent unhappy occurrence was [not] any the less foreseeable by [her] than by her co-defendant." Id. at 147.

In Hill, the defendants' liability was based on the foreseeability that an unlocked car with keys inside would be stolen in a high-crime area, thereby increasing the risk of harm to others. The parking lot operator's policy and other circumstances were the reasons the defendants owed a duty. But here, Cornucopia's policy was to keep the keys in a locked cabinet and have the dispatcher on duty take inventory of them twice every shift. The record contains no suggestion the Avenel facility is in a high-crime area. The other extenuating circumstances present in Hill are not present here.

The fact the van was taken by an employee with access further distinguishes this case from Hill. Cornucopia had even less reason to suspect an employee would take a van for their own personal use—presumably it would not have hired the employee if it had had that suspicion. Cornucopia's policies prohibited employees from taking the delivery vans for their own use, and an employee could be terminated for violating that policy.

12

We decline to follow plaintiffs' argument that the unauthorized use of the van and the accident were sufficiently foreseeable to impose a duty upon Cornucopia. According to Bello, this was the first time an employee had used a delivery van for his own use. Further, even if it was foreseeable an employee would steal one of the vans, Cornucopia could not have known Knight—who had no prior accidents as a driver for the company and was presumably accustomed to driving during early morning hours—would doze off at the wheel and collide with Richard. See Johnson v. Usdin Louis Co., 248 N.J. Super. 525, 530 (App. Div. 1991) (finding it was unforeseeable an employee would steal nitric oxide from his employer and throw it on his family members).

We also reject plaintiffs' argument Cornucopia was negligent in promoting Knight to a dispatcher position after his license was suspended and he could no longer work as a driver. A license suspension alone does not suggest an employee is deceitful or prone to theft. The mere fact Knight had his license suspended would not put Cornucopia on notice that he would use its vehicle in violation of company policy. Knight's disciplinary record at Cornucopia was unblemished, and he had never before been accused of theft or similar conduct.

We also affirm the grant of summary judgment in favor of Amazon. Plaintiffs asserted a theory of vicarious liability, arguing that, although

Cornucopia was an independent contractor of Amazon, Amazon retained control of the manner and means of Cornucopia's operations, subjecting it to liability for Cornucopia's actions. Because we agree Cornucopia is not liable for the accident—this theory falls apart.

Any remaining arguments raised by plaintiffs are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0315-22